UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEVIN G. BURT | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-2038 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD C. WINTER, | ) | |
| Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant Donald C.

Winter, Secretary of the Navy ("Defendant"), through counsel, respectfully moves this Court to

grant summary judgment in favor of the Defendant.   In support of this motion, Defendant refers

the Court to the attached memorandum in support, statement of material facts not in genuine

dispute, and proposed order.  A copy of the full administrative record ("AR") will be filed with a

separate notice.  Because this is a dispositive motion, the undersigned has not sought Plaintiff's

consent before filing it.  LCvR 7.1(m).

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG
Special Assistant United States Attorney

555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEVIN G. BURT | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-2038 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD C. WINTER, | ) | |
| Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Rule 7.1(h), Defendant respectfully submits this statement of material

facts as to which it contends there is no genuine dispute. The statements below are established

by the administrative record in this case.

1.      On June 16, 2000, Plaintiff enlisted in the United States Navy Reserve Delayed

Entry Program, and he enlisted in the active duty Navy for four years in the paygrade of E-2 on

July 31, 2000.  AR 189-192.

2.      Plaintiff attended recruit training at Recruit Training Center, Great Lakes, IL.

Compl. ¶ 8. Plaintiff contends that at the "moment of truth" swearing-in ceremony on August 1,

2000, he admitted that he failed to disclose pre-service headaches prior to his enlistment. Compl.

¶ 9.

3.      On August 1 and 8, 2000, a clinical social worker interviewed Plaintiff and

diagnosed him with Oppositional Defiant Disorder ("ODD"). AR 123-124. In his evaluation,

the social worker noted that Plaintiff self-reported that he often loses his temper; argues with

1

adults; fails to follow rules; deliberately annoys others; blames others for his mistakes or failures; is often angry and resentful; and is often spiteful or vindictive. Id. The evaluation also noted that Plaintiff admitted that he had a history of reckless driving; underage drinking; problems in school including daily tardiness, truancy three times a week, and detentions once a month for misbehavior such as fighting; dropped out of college; and had problems keeping employment. Id. Based on the foregoing, the social worker recommended administrative separation for defective enlistment and induction due to erroneous enlistment as evidenced by ODD. Id.

4.     Plaintiff was notified in writing that the command was processing him for separation based upon this diagnosis, and he waived his rights to consult with an attorney, submit a statement, or have the Commanding Officer's decision to separate him reviewed by a higher authority. AR 203-204. On August 11, 2000, the Commanding Officer authorized Plaintiff's separation with an Entry Level characterization of discharge. AR 202. On August 24, 2000, Plaintiff was issued his discharge document in absentia, which denoted his non-stigmatizing Entry Level Separation. AR 210-211.

5.     Despite this processing, Plaintiff was assigned to a new group of recruits to continue training because neither the legal department or Plaintiff informed his chain of command that he was processed for administrative separation. Compl. ¶ 11 and AR 226. Plaintiff continued recruit training and graduated on October 18, 2000. Compl. ¶ 14.

6.     On or around November 10, 2000, Plaintiff abandoned his duties and went home, thus beginning a period of unauthorized absence. Compl. ¶15; AR 199. Plaintiff claims that he spent ten days of unauthorized absence at home seeking help from his parents and congressman to correct certain problems with his pay. Compl. ¶ 15. Upon his return to duty, Plaintiff

2

expressed the desire not to remain in the Navy. Compl. ¶ 15 and AR 226.

7.      On November 21, 2000, Plaintiff received a mental health evaluation by a civilian psychologist at the command's mental health center. AR 125. Again, Plaintiff self-reported the same temper and behavior problems that he did three months earlier. Id. The psychologist made additional hand-written notes next to two of the categories of "negativistic, hostile, and defiant behavior," stating that Plaintiff reported often arguing with adults such as his parents, anyone in authority, teachers and his principal, and he reported that he would humiliate people or embarrass them. Id. The psychologist further noted that Plaintiff self-reported depressed or irritable mood most of the day; diminished interest in all or most activities; that he could sleep all day; daily fatigue or loss of energy; feelings of worthlessness or excessive guilt; and diminished ability to think or concentrate. AR 126. In the notes, the psychologist narrated Plaintiff's history of adolescent depression and chronic headaches, none of which was revealed in his pre-service paperwork. AR 127. The narrative concluded with a statement that Plaintiff desires a discharge. Id. The psychologist diagnosed Plaintiff with ODD and depressive disorder and recommended administrative separation. AR 125-127.

8.      On November 27, 2000, Plaintiff was notified in writing that the command was processing him for separation based upon this diagnosis, and he waived his rights to consult with an attorney, submit a statement, or have the Commanding Officer's decision to separate him reviewed by a higher authority. AR 218-219. On November 29, 2000, the Commanding Officer authorized Plaintiff's separation with an Entry Level characterization of discharge. AR 217. On December 5, 2000, Plaintiff was issued his discharge document, which denoted his non-stigmatizing Entry Level Separation. AR 224-225.

3

9.      On May 3, 2002, Plaintiff, through counsel, requested that the Naval Discharge

Review Board ("NDRB") change the reason for discharge on his DD Form 214 from erroneous

enlistment to Best Interest of the Service ("BIOTS") and change the separation authority to

"Secretarial authority."  AR 171.  He also requested that his re-enlistment code be upgraded from

RE-4 to RE-1.  Id.

10.     In the declaration in support of his application, Plaintiff denied that either mental

health professional ever asked him the questions evidencing "negativistic, hostile, and defiant

behavior" that were checked "yes" on his mental health evaluations.  AR 198.  However, he

admitted that he did in fact tell the social worker the statements reflected in the "comments"

section of the August 1, 2000 evaluation form and that such statements were accurate.  Id.  Such

statements included his behavioral problems in high school.  AR 123.  Plaintiff also submitted a

mental health evaluation by a private psychologist, dated March 1, 2002, stating there was a lack

of sufficient documentation to support a diagnosis of ODD from the records provided.  AR 128-

129.

11.     After throughly reviewing the records and Plaintiff's supporting documents, the

NDRB found that the discharge was proper and equitable and denied the requested relief on

February 10, 2003.  AR 176-186.

12.     On March 23, 2006, Plaintiff petitioned the Board for Correction of Naval

Records ("BCNR") to correct his service record by removing both of the discharges for ODD and

restoring him to active duty to be assigned to further training.  AR 158-159.  In the alternative,

Plaintiff requested that his erroneous discharge be replaced with one that reflects the Secretary's

discretion, such as BIOTS.  AR 158.  Plaintiff also asked that all documents relating to the

4

diagnosis of ODD be removed from his record. Id.

13.     To assist in their decision, the BCNR requested an independent advisory opinion from the Mental Health Department at the Naval Medical Center, Portsmouth, Virginia. AR 154. The case reviewers from the Naval Medical Center determined that there was insufficient evidence in the record to support a diagnosis of ODD and depressive disorder existing prior to enlistment; therefore, administrative separation for psychiatric reasons was not justified. AR 134. In response to the advisory opinion, Plaintiff, through counsel, withdrew his alternative request for relief (i.e. that his discharge be changed to BIOTS), and asked to be reinstated on active duty and receive back pay since the time of discharge. AR 136.

14.     On August 30, 2004, the BCNR determined that Plaintiff's request warranted partial relief. AR 17. Because both Plaintiff's independent mental health evaluation and the advisory opinion concluded that there was insufficient evidence in the record justifying the diagnosis of ODD or depressive disorder, the BCNR concluded that Plaintiff was improperly separated for that reason. Id. The BCNR acknowledged that they had the ability to restore Plaintiff to active duty, but found that was inappropriate in this case for several reasons. The BCNR concluded that, based upon Plaintiff's pre-service behavior problems, failure to disclose his history of headaches and counseling, unauthorized absence, and his expressed desire to be discharged at that time, Plaintiff would have been discharged for BIOTS, the non-stigmatizing reason for separation assigned when no other reason for separation is appropriate. AR 18. The BCNR removed the first invalid DD Form 214 of August 24, 2000, changed the reason for discharge on his December 5, 2000 discharge to BIOTS, and kept the characterization of discharge the same- Entry Level. AR 18.

15.    The BCNR declined to remove the mental health and administrative processing paperwork for ODD because they served a useful purpose of documenting Plaintiff's pre-service problems, and the BCNR's report in the service record would reflect that the diagnosis was insufficiently documented and Plaintiff was not discharged for ODD. AR 18. The BCNR also declined to change Plaintiff's RE-4 re-enlistment code. Id.

16.    On March 21, 2005, Plaintiff petitioned the BCNR for reconsideration of their decision, and enclosed evidence of certain academic and professional performance. AR 20-22. The BCNR accepted review solely on the issue of re-enlistment code and corrected Plaintiff's discharge to reflect a RE-1 re-enlistment code because the Plaintiff completed recruit training and made a good post-service adjustment. AR 7-8. The BCNR found that no useful purpose was served with the RE-4 code. AR 8.

17.    On November 29, 2006, Plaintiff filed the instant action seeking review of the BCNR's decisions. Compl. ¶ 1. In his compliant, Plaintiff acknowledges that he is waiving any right or entitlement to back pay or other monetary damages related to any remedy that may result from this action. Compl. ¶4.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG
Special Assistant United States Attorney

6

555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEVIN G. BURT | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-2038 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD C. WINTER, | ) | |
| Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Donald C. Winter, Secretary of the Navy ("Defendant") hereby files this

memorandum of points and authorities in support of its Motion for Summary Judgment seeking

judgment as a matter of law on Plaintiff's complaint.

**INTRODUCTION**

Kevin G. Burt ("Plaintiff") brings suit to review the decisions of the Board of Corrections

of Naval Records ("BCNR"), acting on behalf of the Secretary of the Navy, as final agency

decisions under the Administrative Procedures Act, 5 U.S.C.§ 701, *et. seq.* Compl. ¶ 1. Plaintiff

contends that the Defendant refused to provide complete relief and violated his right to have his

military records corrected, pursuant to 10 U.S.C. § 1552, by failing to remove his discharge from

the Navy of December 5, 2000, restore Plaintiff to active duty, and provide other records

corrections requested by the Plaintiff. Compl. ¶ 24. Plaintiff asks this Court to reverse the

Secretary's decision to change his reason of discharge from erroneous enlistment based upon a

diagnosis of oppositional defiant disorder ("ODD") to that of Best Interest of the Service

("BIOTS") because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and was unsupported by substantial evidence." Compl. ¶ 20 and 24. Plaintiff asks the Court to set aside the BCNR decision and order the Defendant to correct his military record to: (1) remove the discharge of December 5, 2000, thereby restoring him to active duty from this date until the expiration of his enlistment contract on July 30, 2004, and issuing him an honorable discharge based upon completion of his obligated service; (2) remove all documents relating to his first separation of August 24, 2000 and remove all documents diagnosing him with ODD and depressive disorder; (3) any other remedy deemed appropriate by this Court. Compl. ¶ 25. Finally, Plaintiff seeks attorneys' fees and costs. Compl. ¶ 26. Defendant is entitled to summary judgment upon the administrative record because the record does not demonstrate that the Secretary's decisions were arbitrary, capricious, an abuse of discretion, or contrary to law.

## STATEMENT OF FACTS

On June 16, 2000, Plaintiff enlisted in the United States Navy Reserve Delayed Entry Program, and he enlisted in the active duty Navy for four years in the paygrade of E-2 on July 31, 2000. AR 189-192. Plaintiff attended recruit training at Recruit Training Center, Great Lakes, IL. Compl. ¶ 8. Plaintiff contends that at the "moment of truth" swearing-in ceremony on August 1, 2000, he admitted that he failed to disclose pre-service headaches prior to his enlistment. Compl. ¶ 9.

On August 1 and 8, 2000, a clinical social worker interviewed Plaintiff and diagnosed him with ODD. AR 123-124. In his evaluation, the social worker notes that Plaintiff self-reported that he often loses his temper; argues with adults; fails to follow rules; deliberately

2

annoys others; blames others for his mistakes or failures; is often angry and resentful; and is

often spiteful or vindictive. Id. Plaintiff also admitted that he had a history of reckless driving;

underage drinking; problems in school including daily tardiness, truancy three times a week, and

detentions once a month for misbehavior such as fighting; dropped out of college; and had

problems keeping employment. Id. Based on the foregoing, the social worker recommended

administrative separation for defective enlistment and induction due to erroneous enlistment as

evidenced by ODD. Id.

     Plaintiff was notified in writing that the command was processing him for separation

based upon this diagnosis, and he waived his rights to consult with an attorney, submit a

statement, or have the Commanding Officer's decision to separate him reviewed by a higher

authority. AR 203-204. On August 11, 2000, the Commanding Officer authorized Plaintiff's

separation with an Entry Level characterization of discharge. AR 202. On August 24, 2000,

Plaintiff was issued his discharge document in absentia, which denoted his non-stigmatizing

Entry Level Separation. AR 210-211.

     Despite this processing, Plaintiff was assigned to a new group of recruits to continue

training because neither the legal department or Plaintiff informed his chain of command that he

was processed for administrative separation. Compl. ¶ 11 and AR 226. Plaintiff continued

recruit training and graduated on October 18, 2000. Compl. ¶ 14.

     Plaintiff contends that he was retained at the Recruit Training Command awaiting orders

because of computer problems resulting from his first discharge. Compl. ¶ 14 and 15. Plaintiff

states that his pay was also discontinued because of the August 24th discharge. Compl. ¶ 15.

After twenty three days at the Great Lakes Training Center without resolution of his pay problem,

Plaintiff abandoned his duties and went home, thus beginning a period of unauthorized absence. Compl. ¶ 15. Plaintiff claims that he spent the ten days of unauthorized absence at home seeking help from his parents and congressman to correct his pay problem. Compl. ¶ 15.

The day of his return, Plaintiff expressed the desire not to remain in the Navy. Compl. ¶ 15 and AR 226. The next day, Plaintiff received a mental health evaluation by a civilian psychologist at the command's mental health center. AR 125. Again, Plaintiff self-reported the same temper and behavior problems that he did three months earlier. Id. The psychologist made additional hand-written notes next to two of the categories of "negativistic, hostile, and defiant behavior," stating that Plaintiff reported often arguing with adults such as his parents, anyone in authority, teachers and his principal, and he reported that he would humiliate people or embarrass them. Id. The psychologist further noted that Plaintiff self-reported depressed or irritable mood most of the day; diminished interest in all or most activities; that he could sleep all day; daily fatigue or loss of energy; feelings of worthlessness or excessive guilt; and diminished ability to think or concentrate. AR 126. In the notes, the psychologist narrated Plaintiff's history of adolescent depression and chronic headaches, none of which was revealed in his pre-service paperwork. AR 127. The narrative concluded with a statement that Plaintiff desires a discharge. Id. The psychologist diagnosed Plaintiff with ODD and depressive disorder and recommended administrative separation. AR 125-127.

On November 27, 2000, Plaintiff was notified in writing that the command was processing him for separation based upon this diagnoses, and he waived his rights to consult with an attorney, submit a statement, or have the Commanding Officer's decision to separate him reviewed by a higher authority. AR 218-219. On November 29, 2000, the Commanding Officer

4

authorized Plaintiff's separation with an Entry Level characterization of discharge. AR 217. On December 5, 2000, Plaintiff was issued his discharge document, which denoted his non-stigmatizing Entry Level Separation. AR 224-225.

When Plaintiff returned home after his discharge, he was immediately hired at Memorial Health Care System and worked in the marketing Research and Communications Development Department from December 2000 to Summer 2001. AR 38. From 2001 to 2004, he attended Indiana University School of Public and Environmental Affairs and earned a Bachelor's of Science degree in Public Affairs management. AR 38. In 2003, Plaintiff also joined the Bloomington Township Department of Fire and Emergency services as a volunteer firefighter. AR 38. Since February 2005, Plaintiff has worked as the Special Assistant to the Assistant Commissioner of Agriculture for the State of Indiana. AR 39.

In 2002, Plaintiff began seeking administrative remedies to change his discharge. On May 3, 2002, Plaintiff, through counsel, requested that the Naval Discharge Review Board ("NDRB") change the reason for discharge on his DD Form 214 from erroneous enlistment to BIOTS, and change the separation authority to "Secretarial authority." AR 171. He also requested that his re-enlistment code be upgraded from RE-4 to RE-1. AR 171. In his declaration in support of his application, Plaintiff denies that either mental health professional ever asked him the questions evidencing "negativistic, hostile, and defiant behavior" that were checked "yes" on his mental health evaluations. AR 198. However, he admitted that he did in fact tell the social worker the statements reflected in the "comments" section of the August 1, 2000 evaluation form and that such statements were accurate. Id. Such statements included his behavioral problems in high school. AR 123. Plaintiff also submitted a mental health evaluation

5

by a private psychologist, dated March 1, 2002, stating there was a lack of sufficient documentation to support a diagnosis of ODD from the records provided. AR 128-129. After throughly reviewing the records and Plaintiff's supporting documents, the NDRB found that the discharge was proper and equitable and denied the requested relief on February 10, 2003. AR 176-186.

On March 23, 2006, Plaintiff petitioned the BCNR to correct his service record by removing both of the discharges for ODD and restoring him to active duty to be assigned to further training. AR 158-159. In the alternative, Plaintiff requested that his erroneous discharge be replaced with one that reflects the Secretary's discretion, such as BIOTS. AR 158. Plaintiff also asked that all documents relating to the diagnosis of ODD be removed from his record. AR 158.

To assist in their decision, the BCNR requested an independent advisory opinion from the Mental health Department at the Naval Medical Center, Portsmouth, Virginia. AR 154. The case reviewers from the Naval Medical Center determined that there was insufficient evidence in the record to support a diagnosis of ODD and depressive disorder existing prior to enlistment; therefore, administrative separation for psychiatric reasons was not justified. AR 134. In response to the advisory opinion, Plaintiff, through counsel, withdrew his alternative request for relief, that his discharge be changed to BIOTS, and asked to be reinstated on active duty and receive back pay since the time of discharge. AR 136.

On August 30, 2004, the BCNR determined that Plaintiff's request warranted partial relief. AR 17. Because both Plaintiff's independent mental health evaluation and the advisory opinion concluded that there was insufficient evidence in the record justifying the diagnosis of

6

ODD or depressive disorder, the BCNR concluded that Plaintiff was improperly separated for that reason. AR 17. The BCNR acknowledged that they had the ability to restore Plaintiff to active duty, but found that was inappropriate in this case for several reasons. The BCNR concluded that, based upon Plaintiff's pre-service behavior problems, failure to disclose his history of headaches and counseling, unauthorized absence, and his expressed desire to be discharged at that time, Plaintiff would have been discharged for BIOTS, the non-stigmatizing reason for separation assigned when no other reason for separation is appropriate. AR 18. The BCNR removed the first invalid DD Form 214 of August 24, 2000, changed the reason for discharge on his December 5, 2000 discharge to BIOTS, and kept the characterization of discharge the same- Entry Level. Id. The BCNR declined to remove the mental health and administrative processing paperwork for ODD because they served a useful purpose of documenting Plaintiff's pre-service problems, and the BCNR's report in the service record would reflect that the diagnosis was insufficiently documented and Plaintiff was not discharged for ODD. AR 18. The BCNR also declined to change Plaintiff's RE-4 re-enlistment code. AR 18.

On March 21, 2005, Plaintiff petitioned the BCNR for reconsideration of their decision, and enclosed evidence of Plaintiff's academic and professional performance. AR 20-22. The BCNR accepted review solely on the issue of re-enlistment code and corrected Plaintiff's discharge to reflect a RE-1 re-enlistment code because the Plaintiff completed recruit training and made a good post-service adjustment. AR 7-8. The BCNR found that no useful purpose was served with the RE-4 code. AR 8.

On November 29, 2006, Plaintiff filed the instant action seeking review of the BCNR's decisions. Compl. ¶ 1.

7

## STANDARD OF REVIEW

The standard of review in this matter is pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 706 et seq.  See Gonzalez v. United States Dep't of State, 135 F.Supp.2d 193, 195 (D.D.C. 2001).  Under the APA, the court shall set aside an agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see also Am. Pub. Communications Council v. FCC, 215 F.3d 51, 55 (D.C. Cir. 2000).

When reviewing an agency action to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court must afford deference to the agency decision and may not substitute its judgment for that of the agency.  See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976); see also Wright v. United States, 164 F.3d 267, 268-69 (5th Cir. 1999) (affirming an agency rights determination); Arizona Public Service Co. v. United States, 742 F.2d 644, 649 (D.C. Cir. 1984).  The scope of the court's deferential review under the "arbitrary and capricious" standard is "'searching and careful,' but 'the ultimate standard of review is a narrow one.'"  Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).  Moreover, the court affords its "greatest deference" to the agency when the agency exercises "special competence" in the subject matter delegated to its regulation.  Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 316 (1965).  Because the ultimate standard of review is highly deferential, to uphold an agency action the court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached ... ."  Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 422 (1983).  Indeed, the arbitrary and capricious standard

8

presumes the agency action to be valid and the burden is on the Plaintiff to overcome that

presumption. Maryland Nat. Capital Park & Planning Comm'n v. Lynn, 514 F.2d 829, 834 (D.C.

Cir. 1975).

In applying the arbitrary and capricious standard, judicial review is "confined to the full

administrative record before the agency at the time the decision was made." Envtl. Def. Fund,

Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981); see also 5 U.S.C. § 706 ("[T]he court shall

review the whole record ... ."). Evidence outside the record should not be considered. See

Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the

administrative record already in existence, not some new record made initially in the reviewing

court.").

The court must review the record to determine "whether the agency has considered the

relevant factors and articulated a rational connection between the facts found and the choice

made." Jifry v. FAA, 370 F.3d 1174, 1180 (D.C. Cir. 2004). Courts have considered several

factors relevant in making this determination. For example, an agency action is arbitrary and

capricious if the agency: relied on factors not intended to be considered, failed to consider an

important aspect of the problem, explained its decision in a manner that contradicts the evidence,

or reached a conclusion so implausible that it cannot be explained by a difference in view or the

product of agency expertise. See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State

Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Similarly, courts also consider whether the

agency "has acted consistently with its previous applications of the governing regulations and

whether the application of its general regulative doctrines to the specifics of th[e] case has been

reasonable." DSE, Inc. v. United States, 169 F.3d 21, 28 (D.C. Cir. 1999).

9

**ARGUMENT**

I.      Defendant Is Entitled to Summary Judgment Upon the Administrative Record Because
        The Record Does Not Support Plaintiff's Procedural Claim That It Was Contrary To Law
        For The BCNR To Exercise Its Authority To Change His Discharge From Erroneous
        Enlistment To BIOTS

        In his complaint, Plaintiff asserts that the BCNR's decision to change the reason for

separation was based upon unfounded speculation that both the command and Secretary of the

Navy would have approved a separation for BIOTS at the time of discharge if erroneous

enlistment was not an option. Compl. ¶ 21. In essence, Plaintiff advances a procedural argument

that the BCNR cannot award a BIOTS discharge retroactively without commanding officer

initiation and Secretary approval at the time of discharge. Plaintiff cannot prove this claim.

        A.      The BCNR Retains Delegated Secretarial Discretionary Authority To Award A
                Retroactive BIOTS Discharge

        Secretary of the Navy Instruction (hereinafter "SECNAVINST") 5420.193 authorizes the

BCNR to consider and take corrective action on behalf of the Secretary for the correction of

naval military records. SECNAVINST 5420.193 (3)(a). The Secretary has authorized the BCNR

to take final corrective action, including changing discharges, on behalf of the Secretary in all but

specifically enumerated cases.[1] See SECNAVINST 5420.193 (3)(a), enclosure (1), subsection

6(e). Plaintiff's petition for correction before the BCNR did not involve any of these categories,

nor does Plaintiff assert as such. Compl. ¶ 24. Therefore, the BCNR, without forwarding the

---

[1] The Secretary retains final approval when (1) comments by proper naval authority are
inconsistent with the BCNR's recommendation; (2) the BCNR's recommendation is not
unanimous; (3) it is in the category of decisions reserved for the Secretary, including records
previously reviewed by the Secretary when the operative facts remain substantially the same,
discharges of officers and midshipmen, and other petitions that the Secretary or the executive
director of BCNR determine warrant Secretarial review. SECNAVINST 5420.19, enclosure (1),
subsection 6(e).

case to the Secretary for final approval, exercised its authority to act on Plaintiff's petition and change the discharge on behalf of the Secretary of the Navy.  SECNAVINST 5420.193, enclosure (1), subsection 6(e).

With this authority in mind, Plaintiff's argument that the BCNR cannot retroactively apply delegated Secretarial approval for the BIOTS discharge must fail.  Whenever a corrections board considers an application, they are asked to use their delegated authority to exercise Secretarial discretion to change a military record.  See 10 U.S.C. § 1552(a)(1).  In the same way, separation for BIOTS is a discretionary separation based on the Secretary's determination of what is in the best interests of the service when no other reason for separation is appropriate.  See MILPERSMAN 1910-164.  The BCNR's role is always to inspect naval records from years past to consider retroactive corrective action, if appropriate, employing Secretarial discretion.  See SECNAVINST 5420.193 (3)(a).  Given its mandate to apply retroactive relief, it is incongruous that the Plaintiff now asserts that the BCNR cannot also award a retroactive discharge using the same delegation of Secretarial authority.  The BCNR does not need to demonstrate that the Secretary of the Navy serving in the year 2000 would have approved a BIOTS discharge.  If this was a requirement for change of a naval record, a petitioner to the BCNR would always be required to prove that the Secretary of Navy in the year petitioner was wronged would have used his Secretarial discretion in his favor if brought to the Secretary's attention.  As this is not the standard nor is it a requirement prior to changing a naval record under the BCNR's Secretarial discretion, it cannot be the standard for the BCNR to award a BIOTS discharge under the same Secretarial discretion.

Furthermore, it was Plaintiff himself who asked the BCNR to change his discharge from

11

erroneous enlistment to BIOTS in both his NDRB petition and original BCNR petition. AR 158 and 171. If Plaintiff did not believe it was within the BCNR's authority to retroactively change the reason for discharge to BIOTS, or if he did not believe that the evidence was such as to favor a BIOTS discharge, it is nonsensical why Plaintiff would have asked for this relief. In the absence of clear and persuasive evidence to the contrary, courts should presume that the Secretary and his boards performed fairly and lawfully. Doyle, 193 F. Supp. at 207. Plaintiff does not meet his burden by "clear and persuasive evidence" to prove that the BCNR does not have the delegated Secretarial authority to award a retroactive BIOTS discharge without proof that the Secretary would have approved such a discharge in the year 2000.

B. Lack Of Command Initiation Of Processing For BIOTS Is Not Required Or Is Harmless Error

Plaintiff contends that it is unfounded speculation by the BCNR that his commanding officer would have initiated administrative separation for BIOTS if the commanding officer discovered that separation for erroneous enlistment was not an option. Compl. ¶ 21. Plaintiff seemingly asserts that the lack of command initiation of the BIOTS separation, or evidence proving that BIOTS was a considered alternative at the time of discharge, invalidates the BIOTS discharge as contrary to law. This argument fails because command initiation is not required under the regulation, or, alternatively, lack of command initiation is harmless error.

Given that BIOTS is a discharge solely at the discretion of the Secretary of the Navy, MILPERSMAN 1910-164 does not list criteria for this discharge other than the absence of the criteria to process for any other reason. MILPERSMAN 1910-164(1)(b). The processing requirement that "Commands must contact Navy Personnel Command (NAVPERSCOM),

Enlisted Performance and Separations Section (PERS-4832) prior to processing to ensure BIOTS is the most appropriate reason for separation processing" only applies in situations where a service member's commanding officer decides to initiate the member's discharge for BIOTS. MILPERSMAN 1910-164(1)(c). This sentence should not be read to add a processing requirement that a commanding officer *must* initiate a separation for BIOTS. The plain language of MILPERSMAN 1910-164 does not require a commanding officer to initiate a BIOTS discharge for the discharge to be valid. This section only requires that if a command desires to process a service member for a BIOTS separation, they must contact Navy Personnel Command to assure that a BIOTS separation is appropriate. MILPERSMAN 1910-164(1)(c). In fact, under this section, there are no procedural limits on the Secretary's plenary authority to discharge a member in the best interest of the service. See MILPERSMAN 1910-164. Given that the Secretary has this plenary authority, absent command initiation, the question of whether or not the command would have initiated BIOTS processing if erroneous enlistment was not an option in 2000 is not an issue and cannot invalidate the discharge as contrary to law.

Alternatively, lack of command initiation is a harmless procedural error. Considering this same issue, the United States Court of Federal Claims ruled that the Secretary's retroactive endorsement of a Plaintiff's discharge proceedings is "strong evidence" that the Plaintiff would have been reprocessed and discharged for BIOTS. See Wagner v. United States, 56 Fed. Cl. 634, 639 (2003). In Eisenhuth v. United States, 59 Fed. Cl. 460 (2004), like the case at bar, the BCNR retroactively changed a separation to BIOTS when the command had not processed the plaintiff for BIOTS originally. In Eisenhuth, the BCNR considered the plaintiff's challenge to his discharge from the Navy for misconduct based on a civilian court conviction and determined

that the separation board had misapplied the regulations concerning separation due to civilian conviction. Id. at 464-465. The BCNR concluded, however, upon its review of the evidence, that plaintiff would have been reprocessed for BIOTS separation and recommended the correction of the plaintiff's naval record to reflect a BIOTS discharge. Id. The Court found that the subsequent approval of the BCNR's recommendation by the designee of the Assistant Secretary of the Navy was consistent with the finding in the Wagner case of "strong evidence" that the Secretary would have authorized the same discharge proceedings as an initial matter, and the failure of plaintiff's commanding officer to initiate the BIOTS reprocessing was a harmless procedural error. Id. at 165.

In this case, the BIOTS discharge was approved by the BCNR under the Secretary of the Navy's discretionary authority as delegated under SECNAVINST 5420.193 (3)(a). As in Eisenhuth, this is "strong evidence" that the Secretary would have authorized the discharge as an initial matter, making the lack of command initiation harmless error.

Under either of the above alternatives, Plaintiff does not satisfy his high burden to overcome the strong presumption that administrators of the military discharge their duties correctly, lawfully, and in good faith. See Frizelle, 111 F.3d at 176. The BCNR appropriately exercised its authority to change Plaintiff's discharge from erroneous enlistment to BIOTS, and it did not need to prove to some standard the inevitability of commanding officer initiation and Secretary approval at the time of discharge, although evidence for both exists.

14

II.     Defendant Is Entitled To Summary Judgment Upon the Administrative Record Because
        The Record Does Not Support Plaintiff's Substantive Claim That The BCNR's Decision
        To Give Plaintiff A BIOTS Discharge Was Arbitrary, Capricious, Or An Abuse Of
        Discretion

        In his complaint, Plaintiff attacks the substance of the Secretary's determination to award

a BIOTS discharge, stating that (1) it is "unsubstantiated speculation" that the commanding

officer would have initiated, and the Secretary would have approved, the BIOTS discharge in

2000; and (2) the facts did not support the discharge. Compl. ¶ 21. As discussed above,

command initiation or Secretarial approval in 2000 are not prerequisite findings for the BCNR to

award a retroactive BIOTS discharge. However, if this court finds the BCNR is required to

undertake this burden, the Court must conclude that the BCNR's decision that a BIOTS

discharge would have been initiated and approved is not arbitrary, capricious, or contrary to law.

Furthermore, the record contains facts supporting the discharge.

        A.      Plaintiff Cannot Prove That The BCNR's Decision To Assume The Initiation And
                Approval Of The BIOTS Discharge In 2000 Was Arbitrary, Capricious, Or An
                Abuse Of Discretion

        The substantive merits of the Secretary's decision are justiciable to the extent that the

court can decide whether or not the resultant decision was "arbitrary, capricious, contrary to law

or unsupported by substantial evidence." Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.),

cert. denied, 479 U.S. 853 (1986) (citations omitted); see Doty v. United States, 53 F.3d 1244,

1252 (Fed. Cir. 1995) (holding that court's review of agency action encompasses only "whether,

on the grounds on which the agency relied for the action that it took, the agency action

constituted arbitrary or capricious conduct, or was an abuse of the agency's discretionary

authority, or violated an applicable statute or regulation."). Plaintiff cannot meet his burden of

15

proof by clear and persuasive evidence, that the Secretary's decision to assume the initiation and approval of a BIOTS discharge in 2000 was arbitrary, capricious, or an abuse of discretion.

To uphold an agency's decision, all that is required is that the decision "minimally contain a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (1983); Fluellen v. United States, 44 Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir.). The BCNR looked at the complete record in this case, including the numerous exhibits submitted by Plaintiff, and decided not to reinstate the Plaintiff to active duty because the record supported a BIOTS discharge in 2000. AR 13-19.

In its decision and action on behalf of the Secretary, the BCNR stated that it made a credibility determination between Plaintiff and the two mental health professions who conducted the psychological exams. AR 17-18. The BCNR did not believe that the two professionals, on separate occasions, would knowingly misrepresent what Plaintiff told them. AR 18. Although Plaintiff now denies making certain statements to the mental health professions, the BCNR, within its discretion, determined that the professionals were more credible. AR 18. In the first examination, Plaintiff stated that he often loses his temper; argues with adults; fails to follow rules; deliberately annoys others; blames others for his mistakes or failures; is often angry and resentful; and is often spiteful or vindictive. AR 123-124. Plaintiff also admitted that he had a history of reckless driving; underage drinking; problems in school including daily tardiness, truancy three times a week, and detentions once a month for misbehavior such as fighting; dropped out of college; and had problems keeping employment. AR 123-124. In his second examination, Plaintiff stated that he was depressed or had an irritable mood most of the day; diminished interest in all or most activities; that he could sleep all day; daily fatigue or loss of

16

energy; feelings of worthlessness or excessive guilt; and diminished ability to think or

concentrate. AR 126. In the notes, the psychologist narrates Plaintiff's history of adolescent

depression and chronic headaches, none of which was revealed in his pre-service paperwork. AR

127. Although a diagnosis of ODD or depressive disorder cannot be proven from the sparse

records, the BCNR concluded that these admissions, coupled with Plaintiff's unauthorized

absence and own desire to leave the Navy, evidenced that a BIOTS discharge was the appropriate

and inevitable outcome in 2000 if erroneous enlistment was not an option. AR 18. There is

certainly a "rational connection" between these facts and the BCNR's decision.

     In his request for reconsideration before the BCNR, Plaintiff cites <u>White v. Secretary of</u>

<u>the Army</u> as precedent that, when determining whether a legal error is prejudicial, a military

corrections board is arbitrary and capricious to consider a discharge proceeding other than the

one that actually took place and assume a certain result would have materialized at the

conclusion of the assumed proceeding. <u>White v. Secretary of the Army</u>, 28 U.S. App. D.C. 399,

878 F.2d 501, 504 (D.C. Cir. 1989). In <u>White,</u> the corrections board determined that the

plaintiff's request for a discharge for the good of the service to avoid a special court-martial was

based upon erroneous advice from counsel, but that the legal error was not prejudicial because

the final result of a discharge under Other Than Honorable (hereinafter "OTH") conditions for a

pattern of misconduct was inevitable. <u>Id.</u> at 502. Though the Court reversed the Army's action,

it based its ruling on facts concerning White's discharge that are not present in this case.

     First, the plaintiff in <u>White</u> received an unfavorable, stigmatizing discharge that was not

contemplated at the time of discharge, which is not the same in the instant case. In <u>White,</u> the

Court highlights the fact that White could not have been discharged with the unfavorable

discharge as a result of the court-martial proceedings initiated by the Army. Id. at 506. Under

the prevailing regulations at the time, a sentence that includes an unfavorable, stigmatizing

discharge could only be obtained if the commanding officer convened the special court-martial

with a court reporter, which he did not do in White's case. Id. at 503. Moreover, to obtain that

unfavorable, stigmatizing discharge administratively, the command would have had to provide

White with a hearing before a board of officers, who would have made a decision on the

discharge after seeing the evidence presented by both sides. Id. The court found it improper for

the corrections board to presume this administration separation board and its result. Id. In the

instant case, however, Plaintiff received a non-characterized, non-stigmatizing Entry Level

Separation, which was the exact discharge contemplated in 2000 as evidenced by the command

twice processing him for this characterization of discharge. AR 202 and 217. Plaintiff had no

right to a hearing before a board of officers in an administrative separation board for either the

erroneous enlistment or BIOTS discharges. See MILPERSMAN 1910-164(2)(a) and 1910-

400(1)(a).[2]

    Second, similar to the above discussion, the Court in White underscores the fact that the

proceeding initiated against the plaintiff at the time of discharge (i.e. the court-martial) was not

the same as the administrative separation proceeding that the corrections board presumed for

their decision. Id. at 504. The Court ruled that a corrections board cannot "postulate an entirely

different proceeding," when the command convened a court-martial where no separation was

---

[2] Under MILPERSMAN 1910-400, a service member is only entitled to an administrative separation board if the service member has served in the Navy for 6 or more years, or if the command is seeking an Other Than Honorable characterization of discharge. MILPERSMAN 1910-400(1)(a) and (b).

possible and "no one had considered, much less held, an administrative discharge proceeding." Id. Quite opposite to the proceedings in White, in this case, an administrative discharge proceeding was both considered and held. AR 202-204 and 217-219. Changing the reason for discharging Plaintiff from erroneous enlistment to BIOTS does not make the process an "entirely different proceeding." Both are administrative separations using Notification Procedures under MILPERSMAN 1910-402. The only difference is that the Secretary of the Navy, not the commanding officer, may finally direct separation for BIOTS, which is not the case for erroneous enlistment. See MILPERSMAN 1910-164(1)(a) and 1910-130(1)(a). A difference in the process, that the separation must be directed by a higher authority, does not make it an "entirely different proceeding" about which the corrections board cannot postulate. The BCNR in this case, opposite to White, did not have to postulate if the commanding officer would initiate separation proceedings for an Entry Level Separation because he had already done so, twice. AR 202 and 217. Furthermore, as already explained, the BCNR did not have to postulate if the Secretary of the Navy would have approved the BIOTS reason for discharge, because the BCNR acted with delegated Secretarial authority and answered this question affirmatively.

Third, the Court in White took issue with the fact that the corrections board based their decision that White would have been discharged, regardless of the legal error, with a stigmatizing discharge in part on White's strong prospect for future misconduct. White, 878 F.2d at 505. The court found this wholly speculative and devoid of legal merit. Id. This in not true with the case at bar. The BCNR did not base their decision to discharge Plaintiff for BIOTS by speculating on Plaintiff's future misconduct. AR 18. Instead, the BCNR looked at Plaintiff's admissions to two mental health professionals, his unauthorized absence, failure to disclose his history of headaches

and counseling, and his own desire to leave the Navy as evidence that a BIOTS discharge was the logical and appropriate course of action in 2000. AR 17-18.

Quite different from the facts in <u>White</u>, Plaintiff's discharge in this case was not a stigmatizing discharge based upon speculation of an entirely different proceeding and outcome than contemplated at the time of discharge. Because the non-stigmatizing, Entry Level characterization of discharge was initiated twice in 2000, using the same administrative separation procedures, albeit with a different final separation authority, and was based on facts rationally connected to the decision made, the Secretary's decision to presume initiation and separation for BIOTS in 2000 was not arbitrary and capricious under <u>White</u>.

Plaintiff's only other argument that this was an arbitrary and capricious decision is that, because Plaintiff graduated recruit training and won the praise of two superior Petty Officers, the command and Secretary would not have processed him for a BIOTS discharge if faced with this possibility in 2000. Compl. ¶ 21. However, the BCNR had this evidence before it and decided that it did not outweigh the other evidence supporting the BIOTS discharge. AR 13-19. Moreover, Plaintiff's performance of duties and graduation from training were facts available to the commanding officer in 2000 and did not apparently alter his decision to process Plaintiff for an Entry Level characterization of discharge by reason of erroneous enlistment. AR 217. The diagnosis of ODD alone could not separate Plaintiff; the commanding officer had the discretion to administratively separate him for erroneous enlistment. <u>See</u> MILPERSMAN 1910-130. Despite Plaintiff completing training and having the support of the Petty Officers, the commanding officer exercised this discretion and discharged Plaintiff. AR 127. Contrary to Plaintiff's assertions, the "unsubstantiated speculation" is actually that the command and

20

Secretary of the Navy would have instead chosen to retain him in 2000 when faced with Plaintiff's own admissions of pre-service behavioral problems, his unauthorized absence, failure to disclose his history of headaches and counseling, and his own stated desire for a discharge. Plaintiff does not meet his burden to prove that the BCNR's decision was arbitrary, capricious or an abuse of discretion. The Secretary's decision should not be disturbed.

### B.    The Secretary's Decision To Award A BIOTS Discharge Relied On Facts Constituting A Legitimate Basis For Discharge

Plaintiff's final argument concerning the discharge is that the BCNR's decision was based upon facts that did not constitute a legitimate basis for discharge. Compl. ¶ 21. In other words, he asserts that the BCNR could not legitimately determine that Plaintiff's discharge was in the best interest of the service based on the facts it articulated. However, because the standard for a BIOTS discharge is the Secretary's discretion, there is no criteria by which to review this decision. See MILPERSMAN 1910-164.

When the Secretary has plenary discretionary authority to discharge service members for the best interest of the service, the court "will not substitute . . . [its] judgment for the board's when reasonable minds could reach differing conclusions. . . ." Sanders, 219 Ct. Cl. at 302, 594 F.2d at 814 (1979) (citing Snell v. United States, 168 Ct. Cl. 219, 227 (1964)). Regarding a BIOTS discharge, MILPERSMAN 1910-164 does not list criteria for this discharge other than the absence of the criteria to process for any other reason. MILPERSMAN 1910-164(1)(b). The Secretary, acting through his corrections board, had complete discretionary authority to decide what was in the best interest of the service. Id. Citing Plaintiff's own admissions of pre-service behavioral problems, his unauthorized absence while at recruit training, failure to disclose his

21

history of headaches and counseling, and Plaintiff's own desire to leave the Navy, the corrections

board determined that it was in the best interest of the service to discharge him. AR 17-18. This

discretionary act was based upon fact, and because it lies wholly within the Secretary's discretion

to decide what is in the best interest of the service, the merits of this decision are not subject to

review. See Eisenhuth, 59 Fed. Cl. at 463 (citing Gilchrist v. United States, 33 Fed. Cl. 791, 803

(1995). The Secretary, acting through his corrections board, found that facts supported a

legitimate basis for a BIOTS discharge, and this decision should not be disturbed.

For the above reasons, the Court should grant summary judgment in favor of the

Defendant because, based on the administrative record, Plaintiff cannot meet his burden of

demonstrating that the Secretary's decision to discharge Plaintiff in December of 2000 for

BIOTS with an Entry Level characterization was arbitrary, capricious, an abuse of discretion, or

contrary to law.

III.     The BCNR's Decision To Retain The Records From Plaintiff's First Discharge
         Processing And Records Of His Two Mental Health Evaluations Was Not Arbitrary,
         Capricious, An Abuse Of Discretion, Or Contrary To Law

Given that the "scope of review under the 'arbitrary and capricious' standard is narrow

and a court is not to substitute its judgment for that of the agency," Plaintiff does not satisfy his

burden to prove by clear and persuasive evidence that the BCNR's decision not to remove the

records from Plaintiff's first administrative separation processing of August 2000 and the records

from his two mental health evaluations was arbitrary and capricious. Motor Vehicle Mfrs. Ass'n,

463 U.S. at 43.

Although the BCNR removed Plaintiff's August 2000 discharge paperwork (AR 210)

finding that it was not effectuated, the BCNR decided not to remove the administrative

22

processing paperwork (AR 203). AR 18. The BCNR reasoned that the processing did, in fact,

take place. AR 18. There was no error found in *processing* Plaintiff in August 2000, rather the

error was the final *outcome*, the discharge, which was not effectuated and removed from the

record. Additionally, Plaintiff does not articulate a harm to him stemming from this processing

paperwork in his record. Clearly, because there is no DD Form 214 discharging him for

erroneous enlistment in August 2000, nothing indicates that he was ever separated in August of

2000 for a mental condition, including ODD.

The BCNR also declined to remove the mental health evaluations for ODD because they

served a useful purpose of documenting Plaintiff's pre-service problems. AR 18. The BCNR's

decision to discharge Plaintiff for BIOTS was based, in part, on Plaintiff's own admissions of

pre-service behavior in these mental health evaluations. AR 18. As discussed, the BCNR

decided the credibility issue surrounding whether Plaintiff admitted these facts in favor of the

two mental health professionals. AR 17-18. If the mental health evaluations were removed,

Plaintiff's record would lack part of the information upon which his BIOTS discharge was based.

Furthermore, Plaintiff does not articulate how he is harmed by these mental health evaluations

being in his record. To the extent that the evaluations may lead one to conclude that Plaintiff was

discharged for a mental condition, the BCNR's report in the service record would reflect that the

diagnosis was insufficiently documented and Plaintiff was not discharged for ODD, and the

BCNR corrected the DD Form 214 in his service record to reflect only a BIOTS discharge. AR

18.

These BCNR decisions demonstrate a "rational connection" between the facts presented

and the resulting decision. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. Because the Court

23

should not "substitute its judgment for that of the agency" and because the BCNR's decisions regarding these records were not arbitrary, capricious or an abuse of discretion, the BCNR's decisions should be summarily affirmed. Id.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment and enter judgment in favor of Defendants.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN G. BURT ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 06-2038 (HHK) |
| ) | |
| v. ) | |
| ) | |
| DONALD C. WINTER, ) | |
| Secretary of the Navy, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Upon consideration of Defendant's Motion for Summary Judgment and the entire record

herein, it is this day of _____ of _____, 2007,

ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED; it is

FURTHER ORDERED that Plaintiff's Complaint be and is hereby DISMISSED with prejudice.

SO ORDERED.


_____
U.S. DISTRICT COURT JUDGE