# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KEVIN G. BURT                                  :
                                               :
                    Plaintiff                  :
                                               :
v.                                             :
                                               :        C.A. No. 06-2038 (HHK)
DONALD C. WINTER                               :
                                               :
                    Defendant                  :
                                               :

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for Summary Judgment pursuant to Fed.R.Civ.P. 56, because there is no genuine issue as to any material fact and plaintiff is entitled to judgment as a matter of law.  In support of this motion, plaintiff relies upon his Complaint; his Combined Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment, attached hereto; the Administrative Record filed by defendant; Plaintiff's Exhibits 1 and 2, attached hereto; and all other exhibits filed by the parties in this case.  Further, plaintiff has filed with his opposition a Statement of Material Facts to Which There Exists a Genuine Issue and has filed with this motion a Statement of Material Facts to Which There is No Genuine Issue.  A proposed Order is attached hereto.

<div style="margin-left:50%">

Respectfully submitted,
 /s/ Grant Lattin
Grant Lattin, DC Bar # 436051
Lattin & Bednar, LLP
Counsel for Plaintiff
11970 Shorewood Court
Woodbridge, Virginia 22192
Phone: (703) 490-0000
Fax: (703) 991-0454
Email: GLattin@ArmedForcesLaw.com

</div>

March 7, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                      |   |                        |
|----------------------|---|------------------------|
| KEVIN G. BURT        | : |                        |
|                      | : |                        |
|          Plaintiff   | : |                        |
| v.                   | : |  C.A. No. 06-2038 (HHK) |
|                      | : |                        |
| DONALD C. WINTER     | : |                        |
|                      | : |                        |
|          Defendant   | : |                        |
|                      | : |                        |

**PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT.**

### INTRODUCTION

Plaintiff, Kevin G. Burt, seeks review of the decisions of the Board for Correction of Naval Records (BCNR) dated 30 August 2004 and 15 August 2006.  Both decisions are final agency decisions under the Administrative Procedure Act (APA) 5 U.S.C. § 701, *et. seq.*  This action arises due to the failure of the BCNR, acting for the defendant, in either or both decisions to provide full and complete relief to the plaintiff after acknowledging that plaintiff was "improperly separated" from the Navy.  The failure of the BCNR to properly correct plaintiff's military records to adequately and fully correct an admitted error or injustice violated the plaintiff's right pursuant to 10 U.S.C. § 1552.  Specifically, in failing to remove the improper discharge of 5 December 2000 and restore plaintiff to active duty and failing to provide the other records corrections requested by plaintiff, the decision of the BCNR was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, plaintiff prays that this Court will compel the defendant to fully and completely correct plaintiff's military records

by ordering the following corrections: (1) remove the unlawful discharge effective 05 December 2000 and all references and amendments thereto, thereby restoring plaintiff to active duty for a period of time extending from the date of his unlawful discharge on 5 December 2000 until the end of his 4-year enlistment obligation, 30 July 2004, and issuing an honorable discharge effective that date based upon the plaintiff having completed his obligated service and incorporating the RE-1 reenlistment code previously assigned by the BCNR; (2) remove all documentation relating to the first separation dated 24 August 2000 for which the DD Form 214 has already been removed, and removing all documents diagnosing the plaintiff with Oppositional Defiant Disorder (ODD) and depressive disorder; and (3) any other remedy deemed appropriate by this Court to provide complete and full relief to the plaintiff.

## STATEMENT OF FACTS

Plaintiff enlisted in the Navy on 16 June 2000 in the delayed enlistment program with an advanced electronics/computer field program guarantee. On 31 July 2000, in accordance with his enlistment contract, he enlisted for four years of active duty and reported to the Recruit Training Command in Great Lakes, Illinois. Complaint (Compl.) ¶ 8; Answer (Answ.) ¶ 8; Administrative Record (AR) 189-193, 198, 210.

On 1 August 2000, at the "Moment of Truth" and based upon the promise that no adverse action would be taken, plaintiff told officials about headaches that he had suffered while in high school. Compl. ¶ 9; AR 198. Plaintiff was referred to a social worker who, without testing or following proper diagnostic procedure, diagnosed him the same day with Oppositional Defiant Disorder (ODD). Compl. ¶ 9; AR 123; *see also* AR 128-129 (noting absence of reports for either past objective or projective psychological testing), AR 130-134 (noting limited history to support diagnosis); AR 235 (describing DSM-IV diagnostic criteria for ODD and requirement that

requisite number of criteria have lasted at least six months).  The diagnosis was repeated one

week later on 8 August 2004.  AR 124; *but see* footnote 2 at page 13 of this Memorandum.

On 11 August 2000, the commanding officer of the Recruit Training Command signed a

letter authorizing plaintiff's separation for erroneous entry based upon the diagnosis of ODD.

Compl. ¶ 10; Answ. ¶ 10; AR 202.  The same day the commanding officer also signed a letter

informing plaintiff's parents of their son's discharge.  Compl. ¶ 10; Answ. ¶ 10; AR 207.

On 15 August 2000, however, plaintiff was assigned to a new ship (group of recruits) to

continue recruit training.  Compl. ¶ 11; AR 198, 226.  His two Recruit Division Commanders,

plaintiff's supervisors during recruit training from 15 August 2000 to 18 October 2000, evaluated

his performance as excellent, noted that he had no disciplinary problems, and reported that he

was given important responsibilities because they could always count on him.  Each stated that

they would serve with plaintiff anywhere in the Navy.  Compl. ¶ 11; AR 119-120.

Despite the fact that plaintiff was successfully participating in recruit training as ordered,

the command mistakenly believed that he had absented himself from the command.  Compl. ¶

12; AR 226.   On 24 August 2000, a DD-214 was executed discharging plaintiff "in absentia" for

erroneous entry.  Compl. ¶ 12; Answ. ¶ 12; AR 210-211.[1]

---

[1] With phenomenal audacity defendant asserts that plaintiff was responsible, at least in part, for
the Navy's error in losing track of him and mistakenly processing him for separation.
Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for
Summary Judgment at 3.  Not only is such an assertion unsupported by the administrative record,
it is typical of the "Alice in Wonderland" circumstances that have brought plaintiff before this
Court.  The record demonstrates that plaintiff was told by a petty officer in the Separations Unit
that Legal had called and that plaintiff was being returned to training.  AR 198.  When he
returned to training as ordered, plaintiff had no reason to believe that he would continue to be
processed for separation.  The entire responsibility for the mistaken discharge is the Navy's
breakdown in communication between the command and the separations unit.  AR 226 (email
correspondence to Capt.Gantt, Commanding Officer at the Recruit Training Command:  "You
put him back in training.  PSD [Personnel Support Department] did not get the word and issued
him a DD-214 in absentia, believing him to be UA.").

When plaintiff's parents received correspondence indicating their son had been discharged, they contacted the Recruit Training Command at Great Lakes to locate their son. Compl. ¶ 13; AR 212.  The Navy initially responded that plaintiff was not at the Recruit Training Command.  *Id.*  After being informed by the parents where they thought their son was located, plaintiff was found serving faithfully as ordered with his new ship.  *Id.*

During the fifth week of his training, plaintiff was told to report to the Legal Office. Compl. ¶ 14; AR 199.  He was informed that he had been discharged several weeks before.  *Id.* He was asked whether or not he wanted to continue training.  Based upon his affirmative response, he was returned to training.  Compl. ¶ 14; AR 199, 226.  He was told that his orders transferring him to his next training command would likely be delayed due to the administrative problems created by the discharge.  Compl. ¶ 14; AR 199.  He was promised that the computers would be fixed and his problems resolved.  *Id.*  Plaintiff passed in review on 15 October 2000, and formally graduated from the Recruit Training Command on 18 October 2000. Compl. ¶ 14; Answ. ¶ 14; AR 199; 226.

From 18 October to 10 November 2000, plaintiff worked daily but unsuccessfully to resolve the administrative entanglements resulting from his continued service after having been mistakenly discharged.  Compl. ¶ 15; AR 199.  Inter alia, plaintiff's pay had been discontinued and he could not be issued new orders.  *Id.*; *see also* AR 226.  Because of his unique and continuing predicament, plaintiff's parents sought to assist him.  Compl. ¶ 15; AR 199.  They sent emails and sought assistance to resolve the bureaucratic impasse faced by their son.  Compl. ¶ 15; AR 212-15.  Because the Navy could neither pay nor issue orders to someone who had been discharged, albeit mistakenly, plaintiff left the Recruit Training Command in frustration on 10 November 2000 to return home and obtain assistance from his parents and his congressman.

Compl. ¶ 15; AR 199. When he returned on 20 November 2000 with his parents, he was told he would face disciplinary action. He was also told that if he stayed in the Navy his life would be hell. Although he had already been discharged, he reluctantly agreed to be discharged again. Compl. ¶ 15; AR 199-200.

Although the bureaucratic problems from the first discharge had yet to be corrected or resolved, plaintiff was discharged again on 5 December 2000. Compl. ¶ 16; Answ. ¶ 16 (limited admission); AR 224-25. This second discharge again asserted erroneous entry into service based upon the diagnoses of ODD and a newly added diagnosis of depressive disorder made on 21 November 2000, the day after plaintiff returned to the Recruit Training command. Compl. ¶ 16; Answ. ¶ 16 (limited admission); AR 224-225, 126.

Only after many months and the involvement of his congressman, his senator, his parents, and a lawyer, did plaintiff receive the pay to which he was entitled based upon his continued service after the initial discharge on 24 August 2000. Compl. ¶ 17; AR 199-200.

After his second discharge on 5 December 2005, plaintiff was subsequently evaluated by a clinical psychologist who determined that plaintiff did not suffer from ODD or depressive disorder. Compl. ¶ 18; Answ. ¶ 18; AR 227-228. Furthermore, the psychologist questioned the validity of the diagnoses made by Navy personnel considering the lack of testing and the high praise received from plaintiff's Recruit Division Commanders. Compl. ¶ 18; AR 227-228.

Plaintiff filed an application to correct his military records with the BCNR. AR 157-252. As part of its consideration, the BCNR sought an advisory opinion from a Specialty Advisor for Psychiatry. Compl. ¶ 19; Answ. ¶ 19; AR 154. The opinion concluded that "there is insufficient evidence to support a diagnosis of oppositional defiant disorder and depressive disorder…. As a

result, there is no apparent psychiatric diagnosis justifying an administrative separation." Compl.
¶ 19; Answ. ¶ 19; AR 149-153.

In its decision dated 30 August 2004, the BCNR acknowledged that plaintiff had been
"improperly separated." Compl. ¶ 20; AR 17. However, rather than correcting the error and
removing the injustice of being improperly separated by removing the improper discharge and
returning plaintiff to active duty as he requested, the BCNR instead: (1) substituted for the
"erroneous enlistment" discharge a "best interest of the service" discharge; (2) removed the
initial discharge dated 24 August 2000 from plaintiff's records but declined to remove the
documentation pertaining to that discharge; (3) declined to upgrade plaintiff's reenlistment code
above RE-4; and (4) declined to remove from plaintiff's military records the admittedly
erroneous diagnoses of ODD and depressive disorder. Compl. ¶ 20; Answ. ¶ 20 (limited
admission); AR 19.

On 21 March 2005, plaintiff requested that the BCNR reconsider its decision. Compl. ¶
22; AR 35-78. On 15 August 2006, the BCNR issued a new decision which upgraded plaintiff's
reenlistment code from RE-4 to RE-1 but again declined to grant full and complete relief to
plaintiff for his admittedly improper separation. Compl. ¶ 22; Answ. ¶ 22 (limited admission);
AR 7-9.

## STANDARD OF REVIEW

While summary judgment is appropriate to resolve disputes over administrative actions,
the court does not employ the standard under Fed. R. Civ. P. 56 but, instead, applies the standard
of review under the relevant statute, if any, and the APA. *Ackerman v. United States*, 324 F.
Supp. 2d 1, 5 (D.D.C. 2004) (citing *Gonzalez v. United States Dep't of State*, 135 F. Supp. 2d
193, 195 (D.D.C. 2001)). Under the APA, agency decisions should not be set aside unless they

are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*.;

5 U.S.C. § 706; *see also Alpharma, Inc. v. Leavitt,* 460 F.3d 1, 6 (D.C. Cir. 2006).

Under the "arbitrary and capricious" scope of review, the court must give the agency's

decision due deference and is not empowered to "substitute its judgment" for that of the agency.

*Ackerman,* 324 F. Supp. 2d at 5 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401

U.S. 402, 415-416, (1971)).  This Court, however, must give the BCNR's decision "a thorough,

probing, in-depth review." *Id.*  The agency is required to examine the relevant data and articulate

a satisfactory explanation for its action including a "rational connection between the facts found

and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29,

43 (U.S. 1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962));

*see also Alpharma,* 460 F.3d at 6 (D.C. Cir. 2006).  The "agency must cogently explain why it

has exercised its discretion in a given manner," and that explanation must be "sufficient to enable

[a reviewing court] to conclude that the agency's action was the product of reasoned

decisionmaking." *Id*. at 48, 52.  Where the agency has failed to provide a reasoned explanation,

or where the record belies the agency's conclusion, the court must undo its action. *Petroleum*

*Communications v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994).  While the agency decision is

entitled to deference, if the result reached is "illogical on its own terms," the agency's action is

arbitrary and capricious. *AFGE, Local 2924 v. FLRA*, 470 F.3d 375, 380 (D.C. Cir. 2006).

In addition, under the APA, review of the agency's decision is limited to the

administrative record that was before the Board at the time the decision was made; the court

cannot go fishing about for more evidence. *Ackerman,* 324 F. Supp. 2d at 5 (citing *Florida*

*Power & Light v. Lorion*, 470 U.S. 729, 743-744, (1985); *Camp v. Pitts*, 411 U.S. 138, 142

(1973)).  Moreover, agency action "must be upheld, if at all, on the basis articulated by the

agency itself." *S. Co. Servs. v. FERC*, 416 F.3d 39, 47 (D.C. Cir. 2005) (quoting *Motor Vehicle*

*Mfrs. Ass'n,* 463 U.S. at 50).  Post hoc rationalizations supplied by appellate counsel may not be

substituted for the agency's own explanation.  *El Rio Santa Cruz Neighborhood Health Ctr. v.*

*United States HHS*, 396 F.3d 1265, 1276 (D.C. Cir. 2005) (citing *Burlington Truck Lines*, 371

U.S. at 168-69).

## ARGUMENT

I.    **Plaintiff Is Entitled To Summary Judgment Because The Decisions Of The BCNR, Acting For The Defendant, Are Arbitrary, Capricious, An Abuse Of Discretion, Or Otherwise Not In Accordance With Law.**

A.    **The Decisions Of The BCNR Are Arbitrary, Capricious, An Abuse Of Discretion, Or Otherwise Not In Accordance With Law Because They Are Illogical On Their Own Terms And Cannot Be Reconciled On The Administrative Record.**

Because the decisions of the BCNR, taken together implement an involuntary "best

interest of the service" (BIOTS) discharge while at the same time providing the plaintiff with a

RE-1 reentry code, the decisions are inconsistent, inherently contradictory and cannot be

reconciled on the administrative record.  In short, the decisions are "illogical on [their] own

terms."  Accordingly, the BCNR's action is arbitrary and capricious and this Court should set

aside the BCNR's refusal to restore plaintiff to active duty and properly correct his military

records.

In its first decision dated 30 August 2004, the BCNR acknowledged that plaintiff had

been "improperly separated" from the Navy but limited the correction of his military records to

1) removing the discharge dated 24 August 2000 and 2) changing the basis for the second

discharge dated 5 December 2000 from an entry level separation based upon "erroneous entry" to

an entry level BIOTS separation.  Although plaintiff sought to have both of the discharges

removed from his records and be recalled to active duty, AR 135-36, the BCNR limited its

remedy to an involuntary separation based upon the "best interest of the service." AR 19. For

the purposes of understanding plaintiff's assertion that the decisions of the BCNR, taken

together, are inconsistent and contradictory, it is essential to note that a BIOTS discharge is

administratively defined by the Military Personnel Manual (MILPERSMAN) as an involuntary

discharge. MILPERSMAN 1910-100; Pl. Exh. 1.

In contrast to the first decision, in its second decision dated 15 August 2006, the BCNR,

after reviewing the evidence of record, concluded that plaintiff's request for correction of his

records warranted favorable action. The BCNR stated:

> It is clear that Petitioner had difficulties while in recruit training and that errors
> occurred which were contributing factors. Since he did complete recruit training
> and has made a good post service adjustment, the Board concludes that no useful
> purpose is now served by the RE-4 reenlistment code and that it should now be
> changed to an RE-1 reenlistment code.

AR 8.

To understand the import of the BCNR action it is necessary to understand the distinction

between the original RE-4 reenlisment code and the corrected RE-1 reenlistment code. Reentry

or reenlistment codes are described at Enclosure 3 of the Bureau of Naval Personnel Instruction

(BUPERSINST) 1900.8B. Pl. Exh. 2. That instruction defines a RE-4 reentry code as

"ineligible for reenlistment" and an RE-1 reentry code as "eligible for reenlistment." Between

RE-1 and RE-4 are the designations RE-2 and RE-3. A RE-2 reentry code denotes that the

former service member is ineligible for reenlistment because of his status as Fleet Reserve,

retired (except for transfer to [Temporary Disability Retired List]), commissioned officer, or

warrant officer. A RE-3 reentry code designates that a former service member is eligible for

reenlistment except for one of 26 disqualifying factors that existed at the time of separation, e.g.

failed physical fitness assessment, hardship/dependency, failed entry level drug test, physical

disability, or minority age.

Taken together the decisions of the BCNR are inherently inconsistent and contradictory for the following reason. In the first decision, the BCNR, after examining the relevant data, explained why plaintiff's original discharge should be removed, but then it replaced that discharge with another discharge involuntarily separating him from the service. In the second decision, after examining the relevant data, the BCNR explained why plaintiff should be considered eligible, without qualification or condition, for reentry into the service. In other words, in one breath the BCNR attempts to explain why the "best interests of the service" dictate that the plaintiff should be involuntarily discharged and in the next breath explains why the plaintiff is considered eligible for reenlistment and continued service without restriction. The two outcomes are inherently contradictory and cannot be reconciled on the administrative record.

Where, as here, a servicemember petitions the appropriate board for the correction of military records "the Secretary is obligated not only to properly determine the nature of any error or injustice, *but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice*.'" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Caddington v. United States*, 178 F. Supp. 604, 606 (Ct. Cl. 1959) (emphasis added). In *Dilley v. Alexander*, 627 F.2d 407, 413 (D.C. Cir. 1980), the Court explained that the relief provided to military servicemen who have been wrongfully discharged from service has been premised upon one central principle: making the injured men "whole". In *Dilley*, the Court further stated that Courts should attempt to return successful plaintiffs to the position that they would have occupied "but for" their improper release. *Id*. Plaintiff emphasizes that when the BCNR conceded that plaintiff was "improperly separated," full and complete correction of plaintiff's military record became an obligation, not a discretionary choice. As highlighted in *Roth*: "The Secretary and . . . boards have an abiding moral sanction to determine, insofar as

10

possible, the true nature of an alleged injustice and to take steps to grant *thorough* and fitting relief."  *Roth*, 378 F.3d at 1381 (emphasis added).

In this case, once the BCNR determined that the evidence before it warranted the correction of plaintiffs military record to include the correction of his reentry code from RE-4 to RE-1, its refusal to provide full and complete correction of the plaintiff's military records that was consistent with the correction of his reenlistment code, including the removal of the second discharge, was both a violation of its mandate and an arbitrary and capricious decision.  In this case, the BCNR after examining the relevant data, not only produced opinions that were "illogical on [their] own terms," but failed to articulate a satisfactory explanation demonstrating a "rational connection between the facts found and the choice made."  Because the BCNR failed to cogently explain the inconsistent exercise of its discretion, the decision to withhold full and complete relief to correct the error or injustice should be set aside as arbitrary and capricious.

B.      **The 30 August 2004 Decision Of The BCNR Is Arbitrary, Capricious, An Abuse Of Discretion, Or Otherwise Not In Accordance With Law Because It Failed To Cogently Explain The Exercise Of Its Discretion.**

In his initial application to the BCNR, the plaintiff submitted evidence demonstrating that his two discharges, both based upon "erroneous entry," were improper.  Based upon this evidence, plaintiff requested, inter alia, that the two improper discharges be withdrawn and that he be returned to active duty.  In its decision dated 30 August 2004 the BCNR conceded that both discharges were improper but declined to correct plaintiff's records as requested.  In explaining its decision, the BCNR stated:

> Since [plaintiff] was processed for separation by reason of erroneous enlistment due to these diagnosed disorders, on a theory that he never would have been enlisted had the Navy known that he suffered from the disorders, and the disorders are insufficiently documented, the Board concludes that Petitioner was improperly separated for that reason.

When an individual has been improperly separated, one possible remedy is the one requested by Petitioner-reinstatement in the service to complete his enlistment.  However, the Board finds such corrective action inappropriate in this case for several reasons.  First, the evaluations completed on Petitioner during his brief period of service in the Navy document a number of preservice behavioral problems.  Petitioner now states that these problems do not, in fact, exist. However, the Board does not believe the evaluators, a qualified social worker and clinical psychologist, would knowingly misrepresent what Petitioner told them during the interviews. Additionally, Petitioner failed to disclose several significant facts when he enlisted, specifically, his long history of headaches, which recurred during recruit training, and his history of family counseling. Although he performed well during recruit training, he also went UA [unauthorized absence] for 10 days. Even though there may well have been mitigating factors, this is not the way military members are supposed to solve their problems. Finally, when Petitioner returned from UA and was asked whether he wanted to remain in the military, he stated on at least two occasions that he did not so desire and only wanted to be discharged.

AR 17-18.

A casual reading of the BCNR decision might initially suggest that the BCNR provided a reasonable explanation for changing the basis of plaintiff's discharge to BIOTS rather than removing both discharges and restoring plaintiff to active duty as requested.  This Court, however, must give the BCNR's decision "a thorough, probing, in-depth review."  *Ackerman,* 324 F. Supp. 2d at 5.   Examination and consideration of the four reasons offered as justification for the BCNR decision, however, reveal that these reasons neither cogently explain the exercise of the BCNR's discretion nor provide a "rational connection between the facts found and the choice made."

The BCNR relies upon four bases to justify not providing full and complete correction of plaintiff's military records:  1) the evaluations completed on plaintiff disclosed important preservice behavior problems, 2) plaintiff failed to disclose headaches and family counseling prior to his enlistment, 3) plaintiff was UA for 10 days, and 4) plaintiff indicated that he wanted

to be discharged.  When examined in light of the administrative record each of the four reasons

offered by the BCNR has serious, if not fatal, shortcomings.

   1.  The evaluations completed on plaintiff disclosed important preservice behavior problems.

   The plaintiff was interviewed by a Navy social worker on August 1 and 8, 2000[2] and a

staff psychologist on November 21, 2000.   In diagnosing the appellant with ODD both the social

worker and psychologist relied upon the presence of eight behavioral problems preprinted and

then checked off on the form diagnosing ODD.  The behavior problems listed on the form are:

1) often loses temper, 2) often argues with adults, 3) often actively defies or refuses to comply

with adults' requests or rules, 4) often deliberately annoys people, 5) often blames others for his

or her mistakes or misbehavior, 6) is often touchy or easily annoyed by others, 7) is often angry

and resentful, and 8) is often spiteful or vindictive.  AR 123-125.  Amazingly, or perhaps not, in

light of the fact that the diagnoses were later determined to be unsupported, both the social

worker and psychologist checked each and every one of the behavioral problems listed on the

form to support their respective diagnoses of ODD.  *Id.*

   After reviewing his application to correct his military records and the evidence of record,

the BCNR accepted that the diagnoses of ODD were not properly supported.  In declining to

provide the complete relief sought, however, the BCNR failed to recognize that the behavioral

problems referenced in the evaluations *are* the diagnostic criteria for ODD.  *See* AR 235 (listing

DSM IV diagnostic criteria for ODD).  It can only follow that if the asserted behavioral problems

_____

[2]  Inspection of the forms dated August 1 and 8, 2000, AR 123-124, disclose that the form dated August 8th  is identical in every regard to the form dated August 1st except for personal identification information on line 2 and the date stamp appearing at the bottom of the form.  A close comparison of the two forms cannot avoid the inference that the form dated August 8th is a photocopy of the August 1st form with initial date removed and a new date stamp applied. Plaintiff personally observed this process.  AR 198.  This observation calls into question the validity, if any, and the value of the purported second interview and diagnosis.

actually existed or were properly supported, the diagnoses of ODD would have been confirmed

rather than rejected.  *Id.*  Since the diagnoses of ODD were recognized as inadequately

supported, the BCNR was required to also recognize that the asserted behavioral problems or

diagnostic criteria forming the basis for the diagnoses were likewise unsupported.  Asserting that

the discredited diagnostic criteria, labeled by the BCNR as behavioral problems, supported the

failure to grant full relief in the correction of plaintiff's military records cannot be sustained.

Furthermore, to the extent that the BCNR may have considered other behavioral problems noted

on the appellant's ODD evaluation, there is no suggestion that such problems would have

disqualified the appellant from enlistment.  *See generally*, AR 109-11.

  2.  Plaintiff failed to disclose headaches and family counseling prior to his enlistment.

  While the BCNR correctly observes that plaintiff failed to disclose headaches and family

counseling prior to his enlistment, the BCNR provides no explanation why this omission

represents grounds for granting a BIOTS discharge rather than the full and complete relief

correction of his military record.  Because the BCNR provides no elaboration, there is no basis

for discerning whether this represents a reasoned basis for withholding relief.  As previously

noted, the BCNR's decision "must be upheld, if at all, on the basis articulated by the agency

itself."  *S. Co. Servs. v. FERC*, 416 F.3d at 47.  It would be improper for either this Court or the

defendant to now supply a post hoc rationalization or embellishment as support for the BCNR's

decision when that reason was not articulated by the BCNR itself.

  While it may be tempting to speculate that the BCNR assumed that a history of

preservice headaches would have disqualified plaintiff from enlistment, there is no analysis of

whether the plaintiff's condition satisfied the relevant legal criteria for disqualification from

enlistment.  *See e.g.* NAVMED P-117, Articles 15-19 and 15-53(1)(e).  AR 110-111, 142, 243.

Furthermore, except for a passing reference, there is no discussion or analysis of whether any in-service headaches interfered with the performance of plaintiff's required duties.  AR 15.  Such an omission, however, is understandable given that plaintiff graduated from recruit training and earned high praise from his instructors while he endured difficult and adverse circumstances not present for other graduating recruits.  AR 14, 119, 120.  Obviously, plaintiff's failure to disclose non-disqualifying conditions would not be a basis for withholding full and complete relief.

In short, without further elaboration this Court is left without a basis to evaluate the propriety of the BCNR's judgment that failure to disclose preservice headaches and participation in family counseling represented a reasoned and legitimate basis for declining to grant full and complete relief to plaintiff.

### 3.  Plaintiff was UA [on Unauthorized Absence] for 10 days.

It is undisputed that plaintiff was discharged, albeit mistakenly, from the Navy on 24 August 2000.  AR 210-211.  The period of time that plaintiff is asserted to have been UA, November 10 to November 20, 2000, post-dates his discharge.  AR 14, 18.  Since plaintiff became a civilian upon discharge, from that point forward he was no longer subject to the Uniform Code of Military Justice (UCMJ).  See 10 U.S.C. § 802.  Accordingly, it was not legally possible for plaintiff to have been UA for the period in question.  A person not subject to the UCMJ cannot commit the offense of being absent without leave (commonly referred to as UA in the Navy) as defined by Article 86 of the UCMJ.  See 10 U.S.C. § 886.  Moreover, plaintiff related that when he left to seek additional assistance, he understood that he had been discharged and that the Navy legal department had confirmed that fact.  AR 199, ¶¶ 6, 10.

Both federal and military courts have recognized that a discharge becomes effective when it is ordered by competent authority and the service member receives either actual or constructive

notice of the discharge. Unless procured by fraud, a discharge is valid and irrevocable even when affected under a mistake of fact. *Huang v. Secretary of the Army*, 23 F. Supp. 2d 1377, 1379 (D. Ga. 1998) (citing *Hirshberg v. Cooke*, 336 U.S. 210 (1949); *U.S. v. Scott*, 11 U.S.C.M.A. 646, 29 C.M.R. 462, 462-463 (CMA) (1960); *U.S. v. Howard*, 20 M.J. 353 (1985)). In this case, there is no dispute that plaintiff's discharge was ordered by competent authority and that plaintiff received notice. Furthermore, there is no suggestion of fraud. Although the Navy may have suggested that the 24 August 2000 discharge could be administratively rescinded, AR 226, such an attempt could have no legal force and could not undo plaintiff's discharge that had already become effective. As a result, the BCNR suggestion that a period of UA was a legitimate reason for effecting a BIOTS discharge rather than restoring plaintiff to active duty cannot be sustained.

### 4. Plaintiff indicated that he wanted to be discharged.

The BCNR alludes to two incidents in which plaintiff stated that he wanted a discharge. Both of these instances occurred on the same day, 20 November 2004, the day appellant returned from his purported period of UA. While references to these statements appear in the administrative record, the conclusion that the appellant wanted a discharge severely distorts the administrative record as a whole.[3] The conclusion ignores the nearly unimaginable predicament and legal entanglement forced upon plaintiff after he was mistakenly discharged from service but nevertheless continued to serve faithfully, even graduating from recruit training. The conclusion ignores the extraordinary lengths to which plaintiff went to remain in the Navy in spite of the frustration he endured while attempting to reconcile his situation with an inflexible and uncaring

---

[3]    This prong of the BCNR's conclusions also ignores the fact that members of the U.S. Navy cannot be discharged merely by request and is inconsistent with the involuntary nature of a BIOTS discharge. Pl. Exh. 1.

bureaucracy. The conclusion conveniently ignores how the Navy embarrassingly sought to bully, intimidate, and rid itself of plaintiff rather than take appropriate measures to correct its own error of having mistakenly discharged him in August 2000; and it ignores the implicit, if not overtly coercive threat, that plaintiff would face discipline and punishment for the purported period of UA if he did not accept a second discharge.

Plaintiff recounts the following:

6.    During the fifth week of training, service week, I was told to go to the Legal Department. I met with Petty Officer 3rd Class Roan. She informed me that I had been discharged several weeks before. They thought I was already home. I later found out that my discharge certificate had been mailed to my home address where my parents received them. My parents had written a letter asking how they had received my discharge papers when I was still at basic training. It was then that the Personnel Support Department (PSD) began looking for me and found me in the middle of the fifth week of training. I talked with PO3 Roan and a Lieutenant Commander whose name I do not recall. They asked me if I wanted to stay in the Navy and I assured them I did. I was also told then that because I had been discharged, I was not in the system, and they would have to correct the records and the computer to get me back in the system. They said that my orders would probably be delayed when I graduated from basic training because of this computer problem, so I would probably be put in a Temporary Holding Unit (THU) upon graduation, but I was assured that would be for a short period of time. I returned to Division 444 and carried on.

7.    During the sixth and seventh week of training I was called to the Dental and Medical Centers where I was informed that they had no records of my testing or shots, though I did go through these procedures at the beginning of training. I was told that these records had been sent away due to my erroneous discharge, so I had to repeat all the physicals and testing.

8.    About the seventh week of training it became apparent that my pay was not correct. I was not receiving any pay. I went to the Disbursing unit, and they sent me to PSD, who sent me to Legal, then back to Disbursing. I was sent back and forth several times. The problem was that the computer system considered me discharged, and nobody seemed to be able to solve the problem. Despite returning to Disbursing several more times during the coming weeks, the problem went unsolved and I received no pay. It was not until after I was discharged the second time, and after my father, Congressman Roemer's office, Senator Lugar's office, and a lawyer became involved that I finally received my pay many months after my final discharge.

9.      Our division passed in review for our graduation on October 15, 2000. The official graduation date was October 18, 2000, the day that all of my fellow recruits received their orders and shipped out.  I was placed in the THU [Temporary Holding Unit].  For the next several weeks I stood a few gate watches during the day and worked nights at the In-processing building where the new recruits checked in.  At no time during any of my service did my actions come into conflict with any superior authority or a fellow recruit.  I worked for several petty officers during this time and they were highly complimentary of my attitude and the manner in which I performed my duties.

10.     From October 18 until November 10, I was striving daily to work with P.S.D., disbursing, and Legal to get my orders and to obtain some pay.  After three weeks, and finally concluding that nobody was making any headway to resolve my situation and that nobody even cared, and because I had been told I was discharged back in August, I went home to obtain assistance from my family and my Congressman.  I immediately went to Congressman Tim Roehmer's office to discuss my case and to determine what options were available to me. Ten days later, on November 20, I returned to the Recruit Training Center with my parents.  There we met with LCDR McBride of the Staff Judge Advocate's office.

11.     By this time, I had lost hope that the Navy would fix this situation.  After my parents left, I was asked by LCDR McBride and LT Chen, another JAG officer, whether or not I still wanted to stay in the Navy.  They implied that things would be bad for me there, and LCDR McBride actually said that my life would be hell.  So now I said no, I just wanted out.  I was by then completely frustrated and now depressed about this situation.  Because I had left without permission, I was initially told that I would be punished at Captain's Mast for going UA, but that never happened.  However, the fact that I went UA was taken by the administrative and legal people as additional evidence of the ODD diagnoses.  I was sent back to the REU [Recruit Evaluations Unit] where a psychologist, [ . . . ] without the benefit of testing or an extensive interview, reconfirmed the ODD diagnosis and added a diagnosis of depressive disorder.

AR 199-200.

The BCNR's suggestion that appellant wanted a discharge relies upon an impermissibly selective and unfair characterization of the administrative record that ignores the extraordinary lengths to which plaintiff went to remain in the Navy until he was bullied and coerced into accepting a discharge.  It is not a reasonable explanation for electing to change the basis of

plaintiff's discharge to BIOTS rather than removing both discharges and restoring plaintiff to active duty as requested.

The four reasons proffered by the BCNR to justify changing the basis of plaintiff's discharge to BIOTS rather than removing both discharges and restoring plaintiff to active duty as requested, are seriously, if not fatally, flawed. Accordingly, the proffered reasons, both individually and cumulatively, cannot be considered a "rational connection between the facts found and the choice made" or a cogent explanation of why the BCNR exercised its discretion in the manner it did so. The reasons offered by the Board to support its decision are not the product of reasoned decision making. Consequently, this Court should consider the 30 August 2004 decision of the BCNR to be arbitrary and capricious. The decision should be set aside and this Court should grant plaintiff the full and complete relief he seeks including:

a. Removing the unlawful discharge effective 05 December 2000 and all references and amendments thereto, thereby restoring plaintiff to active duty for a period of time extending from the date of his unlawful discharge on 5 December 2000 until the end of his 4-year enlistment obligation, 30 July 2004, and issuing an honorable discharge effective that date based upon the plaintiff having completed his obligated service and incorporating the RE-1 reenlistment code previously assigned by the BCNR.

b. Removing all documentation relating to the first separation dated 24 August 2000 for which the DD Form 214 has already been removed, and removing all documents diagnosing the plaintiff with ODD and depressive disorder, and

c. Any other remedy deemed appropriate by this Court to provide complete and full relief to the plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should grant the plaintiff's cross motion for

Summary Judgment, deny the defendant's motion for summary judgment, and enter judgment in

favor of the plaintiff.

Respectfully submitted,

 /s/ Grant Lattin
Grant Lattin, DC Bar # 436051
Lattin & Bednar, LLP
Counsel for Plaintiff
11970 Shorewood Court
Woodbridge, Virginia 22192
Phone: (703) 490-0000
Fax: (703) 991-0454
Email: GLattin@ArmedForcesLaw.com

March 7, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KEVIN G. BURT                                       :
                                                    :
                    Plaintiff                       :
                                                    :
v.                                                  :
                                                    :          C.A. No. 06-2038 (HHK)
DONALD C. WINTER                                    :
                                                    :
                    Defendant                       :
                                                    :

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
TO WHICH THERE EXISTS NO GENUINE ISSUE**

Pursuant to LCvR 7(h) and 56.1, and in support of his Cross-Motion for Summary

Judgment, plaintiff files this Statement of Material Facts to Which There is No Genuine Issue.

Defendant has already filed a Statement of Material Facts to Which There Is No Genuine Issue.

In response to defendant's statement and in support of Plaintiff's Opposition to Defendant's

Motion for Summary Judgment, plaintiff has filed on this same date a Statement of Material

Facts to Which There Exists a Genuine Issue.

1.      Plaintiff enlisted in the Navy on 16 June 2000 in the delayed enlistment program with an

advanced electronics/computer field program guarantee.  On 31 July 2000, in accordance with

his enlistment contract, he enlisted for four years of active duty and reported to the Recruit

Training Command in Great Lakes, Illinois.  Complaint (Compl.) ¶ 8; Answer (Answ.) ¶ 8;

Administrative Record (AR) 189-193, 198, 210.

2.      On 1 August 2000, at the "Moment of Truth" and based upon the promise that no adverse

action would be taken, plaintiff told officials about headaches that he had suffered while in high

school.  Compl. ¶ 9; AR 198.  Plaintiff was referred to a social worker who, without testing or

following proper diagnostic procedure, diagnosed him the same day with Oppositional Defiant

Disorder (ODD).  Compl. ¶ 9; AR 123; *see also* AR 128-129 (noting absence of reports for either past objective or projective psychological testing), AR 130-134 (noting limited history to support diagnosis); AR 235 (describing DSM-IV diagnostic criteria for ODD and requirement that requisite number of criteria have lasted at least six months).  The diagnosis was repeated one week later on 8 August 2004.  AR 124.

3.     On 11 August 2000, the commanding officer of the Recruit Training Command signed a letter authorizing plaintiff's separation for erroneous entry based upon the diagnosis of ODD. Compl. ¶ 10; Answ. ¶ 10; AR 202.  The same day, the commanding officer also signed a letter informing plaintiff's parents of their son's discharge.  Compl. ¶ 10; Answ. ¶ 10; AR 207.

4.     On 15 August 2000, however, plaintiff was assigned to a new ship (group of recruits) to continue recruit training.  Compl. ¶ 11; AR 198, 226.  His two Recruit Division Commanders, plaintiff's supervisors during recruit training, evaluated his performance as excellent, noted that he had no disciplinary problems, and reported that he was given important responsibilities because they could count on him.  Each stated that they would serve with plaintiff anywhere in the Navy.  Compl. ¶ 11; AR 119-120.

5.     Despite the fact that plaintiff was successfully participating in recruit training as ordered, the command mistakenly believed that he had absented himself from the command.  Compl. ¶ 12; AR 226.  On 24 August 2000, a DD-214 was executed discharging plaintiff "in absentia" for erroneous entry.  .  Compl. ¶ 12; Answ. ¶ 12; AR 210-211.

6.     When plaintiff's parents received correspondence indicating their son had been discharged, they contacted the Recruit Training Command at Great Lakes to locate their son. Compl. ¶ 13; AR 212.  The Navy initially responded that plaintiff was not at the Recruit Training

Command. *Id*. After being informed by the parents where they thought their son was located, plaintiff was found serving faithfully as ordered with his new ship. *Id.*.

7. During the fifth week of his training, plaintiff was told to report to the Legal Office. Compl. ¶ 14; AR 199. He was informed that he had been discharged several weeks before. *Id.*. He was asked whether or not he wanted to continue training. Based upon his affirmative response, he was returned to training. Compl. ¶ 14; AR 199, 226. He was told that his orders transferring him to his next training command would likely be delayed due to the administrative problems created by the discharge. Compl. ¶ 14; AR 199. He was promised that the computers would be fixed and his problems resolved. *Id*. Plaintiff passed in review on 15 October 2000, and formally graduated from the Recruit Training Command on 18 October 2000. Compl. ¶ 14; Answ. ¶ 14; AR 199; 226.

8. From 18 October to 10 November 2000, plaintiff worked daily but unsuccessfully to resolve the administrative entanglements resulting from his continued service after having been mistakenly discharged. Compl. ¶ 15; AR 199. Inter alia, plaintiff's pay had been discontinued and he could not be issued new orders. Compl. ¶ 15; AR 199; *see also* AR 226. Because of his unique and continuing predicament, plaintiff's parents sought to assist him. Compl. ¶ 15; AR 199. They sent emails and sought assistance to resolve the bureaucratic impasse faced by their son. Compl. ¶ 15; AR 212-15. Because the Navy could neither pay nor issue orders to someone who had been discharged, albeit mistakenly, plaintiff left the Recruit Training Command in frustration on 10 November 2000 to return home and obtain assistance from his parents and his congressman. Compl. ¶ 15; AR 199. When he returned on 20 November 2000 with his parents, he was told he would face disciplinary action. He was also told that if he stayed in the Navy his

life would be hell.  Although he had already been discharged, he reluctantly agreed to be discharged again. Compl. ¶ 15; AR 199-200.

9.     Although the bureaucratic problems from the first discharge had yet to be corrected or resolved, plaintiff was discharged again on 5 December 2000.  Compl. ¶ 16; Answ. ¶ 16 (limited admission); AR 224-25.  This second discharge again asserted erroneous entry into service based upon the diagnoses of ODD and a newly added diagnosis of depressive disorder made on 21 November 2000, the day after plaintiff returned to the Recruit Training command.  Compl. ¶ 16; Answ. ¶ 16 (limited admission); AR 224-225, 126.

10.     Only after many months and the involvement of his congressman, his senator, his parents, and a lawyer, did plaintiff receive the pay to which he was entitled based upon his continued service after the initial discharge on 24 August 2000.  Compl. ¶ 17; AR 199-200.

11.     After his second discharge on 5 December 2005, plaintiff was subsequently evaluated by a clinical psychologist who determined that plaintiff did not suffer from ODD or depressive disorder.  Compl. ¶ 18; Answ. ¶ 18; AR 227-228.  Furthermore, the psychologist questioned the validity of the diagnoses made by Navy personnel considering the lack of testing and the high praise received from plaintiff's Recruit Division Commanders.  Compl. ¶ 18; AR 227-228.

12.     Plaintiff filed an application to correct his military records with the BCNR.  Compl. ¶ 19; Answ. ¶ 19; AR 157-252.  As part of its consideration, the BCNR sought an advisory opinion from a Specialty Advisor for Psychiatry.  Compl. ¶ 19; Answ. ¶ 19; AR 154.  The opinion concluded that "there is insufficient evidence to support a diagnosis of oppositional defiant disorder and depressive disorder….  As a result, there is no apparent psychiatric diagnosis justifying an administrative separation."  Compl. ¶ 19; Answ. ¶ 19; AR 149-153.

13.     In its decision dated 30 August 2004, the BCNR acknowledged that plaintiff had been "improperly separated."  Compl. ¶ 20; AR 17.  However, rather than correcting the error and removing the injustice of being improperly separated by removing the improper discharge and returning plaintiff to active duty as he requested, the BCNR instead:  (1) substituted for the "erroneous enlistment" discharge a "best interest of the service" discharge; (2) removed the initial discharge dated 24 August 2000 from plaintiff's records but declined to remove the documentation pertaining to that discharge; (3) declined to upgrade plaintiff's reenlistment code above RE-4; and (4) declined to remove from plaintiff's military records the admittedly erroneous diagnoses of ODD and depressive disorder.  Compl. ¶ 20; Answ. ¶ 20 (limited admission); AR 19.

14.     On 21 March 2005, plaintiff requested that the BCNR reconsider its decision.  Compl. ¶ 22; AR 35-78.  On 15 August 2006, the BCNR issued a new decision which upgraded plaintiff's reenlistment code from RE-4 to RE-1 but again declined to grant full and complete relief to plaintiff for his admittedly improper separation.   Compl. ¶ 22; Answ. ¶ 22 (limited admission); AR 7-9.

<div style="text-align: right;">

Respectfully submitted,

 /s/ Grant Lattin
Grant Lattin, DC Bar # 436051
Lattin & Bednar, LLP
Counsel for Plaintiff
11970 Shorewood Court
Woodbridge, Virginia 22192
Phone: (703) 490-0000
Fax: (703) 991-0454
Email: GLattin@ArmedForcesLaw.com

</div>

March 7, 2007

# MILPERSMAN 1910-100

## REASONS FOR SEPARATION

| Responsible Office | NAVPERSCOM (PERS-4832) | Phone: | DSN | 882-4433 |
|---|---|---|---|---|
| | | | COM | (901) 874-4433 |
| | | | FAX | 882-2624 |

1. **Voluntary Reasons**.  The following are reasons for administrative separation that are considered voluntary (COG refers to Convenience of the Government.)

| Reason | See MPM |
|---|---|
| Selected Changes in Service Obligation (active duty) | 1910-102 |
| Expiration of Active Obligated Service (EAOS) | 1910-104 |
| In Lieu of Trial by Court-Martial | 1910-106 |
| COG - Early Release to Further Education | 1910-108 |
| COG - Hardship | 1910-110 |
| COG - Pregnancy or Childbirth | 1910-112 |
| COG - When a Reservist Becomes a Minister | 1910-118 |

2. **Involuntary Reasons**.  The following reasons for administrative separation are normally considered involuntary unless the specific circumstances of the separation indicate otherwise.  (COG refers to Convenience of the Government.)

| Reason | See MPM |
|---|---|
| COG - Physical or Mental Conditions | 1910-120 |
| COG - Personality Disorder(s) | 1910-122 |
| COG - Parenthood | 1910-124 |
| COG - Review Action | 1910-126 |
| COG - Being an Alien | 1910-127 |
| Defective Enlistments and Inductions - Minority | 1910-128 |
| Defective Enlistments and Inductions - Erroneous Enlistment | 1910-130 |
| Defective Enlistments and Inductions - Defective Enlistment | 1910-132 |
| Defective Enlistments and Inductions - Fraudulent Entry into the Naval Service | 1910-134 |
| Delayed Entry Program (DEP) | 1910-136 |
| Misconduct - Minor Disciplinary Infractions | 1910-138 |
| Misconduct - Pattern of Misconduct | 1910-140 |
| Misconduct - Commission of a Serious Offense | 1910-142 |

| Reason | See MPM |
|---|---|
| Misconduct - Civilian Conviction | 1910-144 |
| Misconduct - Drug Abuse | 1910-146 |
| Homosexual Conduct | 1910-148 |
| Alcohol Abuse Rehabilitation Failure | 1910-152 |
| Entry Level Performance and Conduct | 1910-154 |
| Unsatisfactory Performance | 1910-156 |
| Unsatisfactory Participation in the Ready Reserve | 1910-158 |
| Supremacist and Extremist Conduct | 1910-160 |
| Family Advocacy Program (FAP) Rehabilitation Failure | 1910-162 |
| Best Interest of the Service (BIOTS) | 1910-164 |
| Fleet Reserve/Retired List/Retired Reserve in Lieu of Administrative Separation Processing | 1910-166 |
| Physical Disability | 1910-168 |

3.  **Other Reasons**.  The following are other reasons for administrative separation, and are considered involuntary.

| Reason | See MPM |
|---|---|
| Disposition of Enlisted Personnel Disenrolled from a Navy Officer Candidate Program (including the Naval Academy) | 1910-182 |
| Disposition of Enlisted Personnel Accepted for Appointment to the Military Academy, the Air Force Academy, or the Coast Guard Academy | 1910-184 |
| Disposition of Enlisted Personnel Disenrolled from the Military Academy, the Air Force Academy, or the Coast Guard Academy | 1910-186 |

BUPERSINST 1900.8B
10 May 05

### REENTRY CODES

RE-R1   Recommended for preferred reenlistment.

RE-1    Eligible for reenlistment.

RE-1E   Eligible for reenlistment, but not reenlisted due to
        ENCORE regulations.

RE-2    Ineligible for reenlistment because of the following
        status:

        - Fleet Reserve.

        - Retired (except for transfer to TDRL).

        - Commissioned officer.

        - Warrant officer.

RE-3    Eligible for reenlistment except for disqualifying
        factor.  Add letter to indicate status at time of
        separation:

        RE-3A   Alien (Discharged under MILPERSMAN 1910-127).

        RE-3B   Parenthood/Pregnancy/Childbirth.

        RE-3C   Conscientious objector.

        RE-3E   Inducted/Enlisted/Extended/Reenlisted in error.

        RE-3F   Failed the physical fitness assessment (PFA).

        RE-3G   Condition (not physical disability) interfering
                with performance of duty.

        RE-3H   Hardship/Dependency.

        RE-3J   Failed entry level drug test, not drug
                dependent.

**Plaintiff's Exhibit 2
Page 1 of 2**

BUPERSINST 1900.8B
10 May 05

## REENTRY CODES (CONTINUED)

RE-3K    Disenrolled from Naval Academy or other officer program.

RE-3    RE-3M    Ineligible for reenlistment in current rating.

RE-3P    Physical disability (includes discharge and transfer to TDRL).

RE-3Q    Disqualified for officer candidate training (not physically qualified for appointment as officer in the naval service).

RE-3R    Not meeting the professional growth criteria (See OPNAVINST 1160.5C).

RE-3S    Surviving family member.

RE-3U    Minority age.

RE-3X    Nonswimmer.

RE-3Y    Received Voluntary Separation Incentive (VSI).

RE-3Z    Received Special Separation Benefit (SSB).

RE-4    Ineligible for reenlistment.

RE-5    USNR-R released after serving 90 or more days of Active Duty for Training (ADT). Returned to Reserve Unit/activity without reenlistment eligibility being determined.

RE-6    Ineligible or denied reenlistment due to High Year Tenure.

RE-7    Completing the initial 2-year active duty obligation under the 2x8 Naval Reserve Program.

**Plaintiff's Exhibit 2**
**Page 2 of 2**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEVIN G. BURT                                    :
                                                 :
                    Plaintiff                    :
                                                 :
v.                                               :          C.A. No. 06-2038 (HHK)
                                                 :
DONALD C. WINTER                                 :
                                                 :
                    Defendant                    :
                                                 :

## ORDER

Upon consideration of Defendants' Motion for Summary Judgment, plaintiff's

opposition, and defendants' reply thereto; and upon consideration of the Plaintiff's Cross-Motion

for Summary Judgment, defendant's opposition, and plaintiff's reply thereto; and the Court

having considered the entire record herein, it is this _____ day of

_____, 2007,

ORDERED, that the Defendants' Motion for Summary Judgment is DENIED.  It is

further

ORDERED, that Plaintiff's Cross-Motion for Summary Judgment is GRANTED.  It is

further

ORDERED, that defendant shall correct plaintiff's military records by

a.  Removing the discharge effective 05 December 2000 and all references and

amendments thereto, thereby restoring plaintiff to active duty for a period of time extending from

the date of his the discharge on 5 December 2000 until the end of his 4-year enlistment

obligation, 30 July 2004, and issuing an honorable discharge effective that date based upon the

plaintiff having completed his obligated service and incorporating the RE-1 reenlistment code previously assigned by defendant.

b.  Removing all documentation relating to the first separation dated 24 August 2000 for which the DD Form 214 has already been removed, and removing all documents diagnosing the plaintiff with oppositional defiant disorder and depressive disorder.

_____
UNITED STATES DISTRICT JUDGE