UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEVIN G. BURT ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 06-2038 (HHK) |
| ) | |
| v. ) | |
| ) | |
| DONALD C. WINTER, ) | |
| Secretary of the Navy, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Donald C. Winter, Secretary of the Navy ("Defendant") hereby files this memorandum of points and authorities in support of its opposition to Plaintiff's cross motion for summary judgment and reply in support of its motion for summary judgment.

### INTRODUCTION

Kevin G. Burt ("Plaintiff") brings suit to review the decisions of the Board of Corrections of Naval Records ("BCNR"), acting on behalf of the Secretary of the Navy, as final agency decisions under the Administrative Procedures Act, 5 U.S.C.§ 701, *et. seq.* Compl. ¶ 1. Plaintiff contends that the Defendant refused to provide complete relief and violated his right to have his military records corrected, pursuant to 10 U.S.C. § 1552, by failing to remove his discharge from the Navy of December 5, 2000, restore Plaintiff to active duty, and provide other records corrections requested by the Plaintiff. Compl. ¶ 24. Plaintiff asks this Court to reverse the Secretary's decision to change his reason of discharge from erroneous enlistment based upon a diagnosis of oppositional defiant disorder ("ODD") to that of Best Interest of the Service

("BIOTS") because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and was unsupported by substantial evidence." Compl. ¶¶ 20 and 24.

In Plaintiff's opposition to Defendant's motion for summary judgment, Plaintiff waived any procedural challenge to the authority of the BCNR to issue a BIOTS discharge in this case. See Opp. ¶ 1. Plaintiff no longer contends that the BCNR exceeded its authority and/or violated procedure by retroactively awarding a BIOTS discharge. Id. After waiving the procedural challenge, Plaintiff's sole basis for summary judgment in his favor, and opposition to Defendant's motion for summary judgment, is a substantive challenge to the merits of the Secretary of the Navy's decision acting through the BCNR. Id. However, because the standard for a BIOTS discharge is the Secretary's discretion, there is no criteria by which to review this decision. See MILPERSMAN 1910-164. Plaintiff's substantive challenge to the merits of the BIOTS discharge must fail because, lacking any procedural failings, the substantive merit of the Secretary's decision is a non-justiciable issue. See Eisenhuth v. United States, 59 Fed. Cl. 460 (2004) (citing Gilchrist v. United States, 33 Fed. Cl. 791, 803 (1995)). Alternatively, even if the Court finds that a justiciable issue exists, Plaintiff does not satisfy the high burden of proof to substantiate his claims that the BCNR decision is illogical and that the written opinion does not sufficiently justify discharge.

**ARGUMENT**

I.  Without Procedural Failings, the Merit of the BCNR's Decision to Award a BIOTS Discharge is Non-Justiciable Because the Controlling Regulation Provides No Guidance Other Than Secretarial Discretion to Determine What Is In the Best Interests of the Service

Contrary to Plaintiff's assertions, the substantive merits of the Secretary's decisions in this case are not justiciable because the Court has no criteria by which to judge what is in the

2

"best interests of the service" and the Plaintiff waived his claims relating to procedural violations.

Justiciability depends upon "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded...." Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). A case is thus reviewable and justiciable only if it is " 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.' " Voge v. United States, 844 F.2d 776, 780 (Fed.Cir.), cert. denied, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (quoting Greene v. McElroy, 254 F.2d 944, 953 (D.C.Cir.1958), rev'd on other grounds, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)) (citations omitted).

The court shall not infringe upon the rights and duties of other administrative agencies when attempting to respond to a claim. If a court finds a matter nonjusticiable, then it must "abstain" from review. Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993). Exercise of such discretion is particularly necessary when reviewing military actions. The Supreme Court ruled that the judiciary must be "scrupulous not to interfere with legitimate [military] matters." Orloff v. Willoughby, 345 U.S. 83, 94, 97 L. Ed. 842, 73 S. Ct. 534 (1953); see Birt v. United States, 180 Ct. Cl. 910, 913 (1967) ("We may test the validity of a discharge only in terms of its legal sufficiency and not in terms of the military's wisdom in discharging one of its members. . . ."); see also Boyd v. United States, 207 Ct. Cl. 1, 9 (1975), cert. denied, 424 U.S. 911, 47 L. Ed. 2d 314, 96 S. Ct. 1106 (1976) ("Discretion is not to be interfered with lightly, especially in view of the courts' traditional reluctance to involve themselves in internal affairs of the military, in

3

which they have little or no special competence and less responsibility. . . .") (citations omitted). Judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established "tests and standards" against which the court can measure his conduct. . . ." Murphy 993 F.2d at 873 ("The merits of the Air Force's decision to release [this officer] from active duty are beyond judicial reach."). Although the court cannot review "the merits of a decision committed wholly to the discretion of the military," it may review "a challenge to the particular procedure followed in rendering a military decision." Adkins v. United States, 68 F.3d 1317, 1323 ( C.A. Fed. 1995); Murphy, 993 F.2d at 873 (stating that a court may determine whether the procedures followed comport with the statutory or regulatory standard).

Courts have only been able to rule on the substantive merits of Secretarial discharges where the controlling regulation provides no standards of review, when plaintiffs have asserted, and courts have found, procedural violations in the plaintiffs' discharges. See Eisenhuth, 59 Fed. Cl. at 464; Gilcrest, 33 Fed. Cl. at 800 ("If the court finds that required procedures were violated in connection with plaintiff's discharge, the substantive merits of the Secretary's decision are justiciable to the extent that the court can decide whether or not the resultant decision was 'arbitrary, capricious, contrary to law or unsupported by substantial evidence,' citing Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.), cert. denied, 479 U.S. 853 (1986) (citations omitted). In this case, Plaintiff abandoned all procedural claims relating to the BIOTS discharge, and no procedural violations occurred. Opp. ¶ 1. Regarding a BIOTS discharge, MILPERSMAN 1910-164 does not list criteria for this discharge other than the absence of the criteria to process for any other reason. MILPERSMAN 1910-164(1)(b). There are no "tests and standards" against which this Court can measure whether Plaintiff's continued service was in the "best interests of the

service" in 2000. Murphy, 993 F.2d at 873. As in Eisenhuth and Gilcrest, without a procedural flaw in the discharge, this Court cannot pass judgment on the merits of the Secretarial decision to award a discharge where the applicable statute lists no criteria, no "tests and standards," by which to measure the decision. Eisenhuth, 59 Fed. Cl. at 464; Gilcrest, 33 Fed. Cl. at 800. The substantive merit of the Secretary's decision is non-justiciable and summary judgment should be granted in favor of the Defendant.

II.  Even If the Court Decides That a Justiciable Issue Exists, Plaintiff Does Not Overcome the Highly Deferential Standard of Review to Prove That the BCNR's Decision Was Arbitrary, Capricious, An Abuse of Discretion, Or Otherwise Not In Accordance With Law

The court affords its "greatest deference" to the agency when the agency exercises "special competence" in the subject matter delegated to its regulation. Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 316 (1965). When the Secretary has plenary discretionary authority to discharge service members for the best interest of the service, the court "will not substitute . . . [its] judgment for the board's when reasonable minds could reach differing conclusions. . . ." Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 814 (1979) (citing Snell v. United States, 168 Ct. Cl. 219, 227 (1964)). Plaintiff does not satisfy the high burden of proof to substantiate his claims that the BCNR decision is illogical and that the written opinion does not sufficiently justify discharge.

 A.  A Plain Reading of the BCNR's Decision on Plaintiff's Request For Reconsideration Demonstrates That Changing Plaintiff's Reenlistment Code From RE-4 to RE-1 In 2006 Does Not Retroactively Render Their 2004 Decision to Award a BIOTS Discharge Illogical

Plaintiff advances the peculiar argument that, by upgrading Plaintiff's reenlistment code based upon evidence submitted in his request for reconsideration in 2006, the BCNR's 2004

decision on his initial application for records correction is retroactively illogical and, therefore, arbitrary, capricious, and an abuse of discretion. Pl. Mot. at 8. However, Plaintiff offers no explanation in law or logic how the subsequent decision retroactively renders the initial decision illogical, nor does Plaintiff's interpretation of the BCNR's decision on reconsideration square with the plain language of the decision.

Plaintiff asserts that "in one breath" the BCNR attempts to explain why a BIOTS discharge is warranted, and "in the next breath" explains the upgrade in reenlistment code, neither of which are consistent with the rationale for the other. Pl. Mot. at 10. This is incorrect. The BIOTS discharge decision and decision to upgrade the enlistment code were made on two separate occasions and were based upon entirely different evidence and different, and non-conflicting, rationales. AR 7-8, 17-18.

On August 30, 2004, the BCNR determined that Plaintiff's initial request for records correction warranted partial relief and removed the first invalid DD Form 214 of August 24, 2000, changed the reason for discharge on his December 5, 2000 discharge to BIOTS, and kept the characterization of discharge the same- Entry Level. AR 17-18. The BCNR concluded that, based upon Plaintiff's preservice behavior problems, failure to disclose his history of headaches and counseling, unauthorized absence, and his expressed desire to be discharged at that time, Plaintiff would have been discharged for BIOTS, the non-stigmatizing reason for separation assigned when no other reason for separation is appropriate. AR 18. Looking at the facts as they were in 2000, the BCNR concluded that a BIOTS discharge would have been awarded had the original basis of discharge for ODD failed. Id. The BCNR also declined to change Plaintiff's RE-4 reenlistment code for the same reasons. AR 18.

Two years later, on August 15, 2006, the BCNR accepted review *solely* on the issue of reenlistment code. AR 8. The BCNR did not consider, nor did it discuss, the propriety of the initial decision to award the BIOTS discharge. AR 7-8. Because the Plaintiff enclosed new evidence of Plaintiff's academic and professional performance since his discharge in his request for reconsideration, the BCNR granted review on the question of whether the RE-4 code serves any useful purpose *at this time*. AR 8. The BCNR clearly states that, "Since he did complete recruit training and has made a good post service adjustment, the Board concludes that ***no useful purpose is now served*** by the RE-4 reenlistment code and that it should ***now*** be changed to an RE-1 reenlistment code." Id. (emphasis added). The BCNR did not second-guess or invalidate the propriety of their 2004 decision on the reenlistment code. Rather, based upon the new evidence that the Plaintiff presented of his post-service education and employment, the BCNR decided that the continuance of the RE-4 code serves no useful purpose now. Id.

In 2004, the BCNR concluded that, looking back to the circumstances in 2000, the Plaintiff's discharge was in the best interests of the service and he should not be allowed to reenlist for the same reasons. AR 17-18. In 2006, based upon new evidence of post-service employment and education, the BCNR upgraded the reenlistment code and now allowed the Plaintiff to reenlist should he chose to do so. AR 8. This is in no way "illogical" as the Plaintiff now argues. Plaintiff was discharged in 2000, and based upon his subsequent actions in the next 6 years, his discharge was upgraded, allowing him to once again enlist in the military. Id. This scenario is not only typical of BCNR cases, but it is also the very request Plaintiff made in his petition for reconsideration to the BCNR. AR 37. On March 21, 2005, Plaintiff asked that, if the BCNR again approves the BIOTS discharge, they should still upgrade the reenlistment code

based upon the new evidence before the board.  Id.  Plaintiff made the same equitable argument that the BCNR ultimately adopted, the same one that the Plaintiff now contends is "inherently contradictory and cannot be reconciled on the administrative record."  Pl. Mot. at 8.

The upgrade in reenlistment code in no way demands that the BCNR remove the 2000 BIOTS discharge and restore Plaintiff to active duty.  Plaintiff argues that by changing the reenlistment code, the BCNR only provided him partial relief in violation of case law.  Pl. Mot. at 8-11.  Plaintiff correctly states that, if the Secretary determines that a servicemen was wrongly discharged, complete correction of the military record is an obligation, not a discretionary choice.  Pl. Mot. at 8 (citing Roth v. United States, 378 F.3d 1371, 1381 (Fed. Cir. 2004).  However, this rule is inapplicable in this situation.  The BCNR did not decide to upgrade Plaintiff's reenlistment code because he was improperly separated.  Upon reconsideration, the BCNR left intact their 2004 decision that a BIOTS discharge was proper.  AR 7.  The upgrade in discharge had nothing to do with the propriety of the discharge, and, in fact, represents complete relief on the only issue the BCNR considered, the propriety of a RE-4 code given Plaintiff's post-service adjustment.  Moreover, the Plaintiff can cite no regulation or statute stating that a BIOTS discharge and a RE-1 reenlistment code cannot coexist on a DD214 discharge document.

Because Plaintiff offers no explanation in law or logic how the subsequent decision retroactively renders the initial decision illogical, nor does Plaintiff's interpretation of the BCNR's decision on reconsideration square with the plain language of the decision, Plaintiff does not meet the high burden of proof that the Secretarial decision to award a RE-1 reenlistment code while keeping the BIOTS discharge was arbitrary, capricious, and an abuse of discretion.

B.    The BCNR's Decision That the Plaintiff's Discharge Was In the Best Interests of the Service Is Rationally Connected To the Facts In the Administrative Record

To uphold an agency's decision, all that is required is that the decision "minimally contain a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); Fluellen v. United States, 44 Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir. 2000). The BCNR looked at the complete record in this case, including the numerous exhibits submitted by Plaintiff, and decided not to reinstate the Plaintiff to active duty because the record supported a BIOTS discharge in 2000. AR 13-19. Although Plaintiff's characterization of evidence demonstrates how reasonable minds may differ when presented with the same set of facts, Plaintiff does not meet his high burden to overcome the deference afforded to Secretarial decisions. Instead, Plaintiff asks this court to substitute its judgment for the BCNR's, precisely what courts are not empowered or inclined to do. Sanders, 219 Ct. Cl. at 302, 594 F.2d at 814 (1979).

First, Plaintiff asserts that because the BCNR found the diagnostic criteria of ODD to be unsupported in Plaintiff's record, they cannot use the preservice behavioral problems listed within the criteria of ODD as support for a BIOTS discharge. Pl. Mot. at 13. Although the BCNR agreed with the advisory opinion that there was a lack of sufficient documentation to support a diagnosis of ODD from the records provided, the BCNR did not believe that the two mental health professionals, on separate occasions, would knowingly misrepresent what Plaintiff told them. AR 18. Although Plaintiff now denies telling the mental health professions these facts which make up the diagnostic criteria for ODD, the BCNR determined that the

9

professionals were more credible, which is wholly within their discretion.[1]  Id.

When arguing that the preservice behavioral problems making up the diagnostic criteria for ODD were unsubstantiated and an improper basis for the BCNR's decision, Plaintiff wholly ignores the other preservice behavioral problems that he admitted to telling the two mental health professionals and that the professionals handwrote on their diagnostic forms.  Plaintiff admitted that he had a history of reckless driving; underage drinking; problems in school including daily tardiness, truancy three times a week, and detentions once a month for misbehavior such as fighting; dropped out of college; and had problems keeping employment.  AR 123-124.  Plaintiff admits that the mental health professional did obtain those facts from him and "the facts are accurate."  AR 198.  In the notes regarding the second examination, the psychologist narrates that Plaintiff reported often arguing with adults such as his parents, anyone in authority, teachers and his principal, and he reported that he would humiliate people or embarrass them.  AR 125.  The psychologist also notes a history of adolescent depression and chronic headaches, none of which was revealed in his preservice paperwork.  AR 127.  Although a diagnosis of ODD or depressive disorder cannot be proven from the sparse records, the BCNR concluded that these admissions, coupled with Plaintiff's unauthorized absence and own desire to leave the Navy, evidenced that a BIOTS discharge was the appropriate and inevitable outcome in 2000 if erroneous enlistment was not an option.  AR 18.  There is certainly a "rational connection" between these facts and the BCNR's decision.

---

[1] The BCNR believed that, in the first examination, the Plaintiff stated that he often loses his temper; argues with adults; fails to follow rules; deliberately annoys others; blames others for his mistakes or failures; is often angry and resentful; and is often spiteful or vindictive. AR 123-124.

Second, Plaintiff contends that his failure to disclose a history of adolescent depression and chronic headaches should not have been one of the bases of the BCNR's decision to award a BIOTS discharge because there is no evidence that the BCNR considered whether these would have been independent disqualifications for enlistment in 2000. Pl. Mot. at 14. Plaintiff counsels against post-hoc rationalization of the BCNR decision when the rationale was not articulated in the decision. Id. In this case, however, Plaintiff's conjectured rationale is not relevant or necessary because the BCNR's application of these facts to their ultimate decision is clear on its face. The BCNR states, "Petitioner failed to disclose several significant facts when he enlisted, specifically, his long history of headaches, which reoccurred during recruit training, and his history of family counseling." AR 18. By using the words "failure to disclose" instead of, for example, "mistakenly forgot" and by stating that the non-disclosed facts were "significant," the BCNR is clearly taking issue with the Plaintiff's integrity and compliance with military rules and procedure. Plaintiff admits that he failed to disclose these on his preservice paperwork, and instead, waited until recruit training to divulge this information. AR 198. While this alone probably would not have justified the BIOTS discharge, it was certainly an obvious and appropriate fact to consider in this case.

Third, Plaintiff argues that, because he was never prosecuted for the ten days of unauthorized absence ("UA"), the BCNR could not consider his actions when deciding whether to issue the BIOTS discharge. Pl. Mot. at 15. Plaintiff contends that he was discharged on August 24, 2000; therefore, he was not on active duty or subject to military control from November 10-20, 2000, when he was reported as UA. Id. While this argument would have been appropriate to make in court had Plaintiff's commanding officer decided to prosecute him at a

court-martial, it is wholly irrelevant in this context. The BCNR did not base their decision on the fact that Plaintiff was prosecuted, or even disciplined, for being UA. AR 18. In fact, the BCNR had evidence that he was not. Id. The BCNR stated that leaving the command was "not the way military members were supposed to solve their problems." Id.

It is of no relevance that Plaintiff technically might not have been UA according to the Uniform Code of Military Justice.[2] Plaintiff attempted to solve problems with his pay and orders by absenting himself from his duties without telling anyone at his command. Plaintiff admits that when he was returned to training after the August 24 discharge, he had "no reason to believe that he would continue to be processed for separation." Pl. Mot. at 3. He completed recruit training and performed various duty assignments while awaiting the correction of his pay problems and the issuance of orders to his next duty assignment. AR 199. If Plaintiff believed himself to be discharged, he would not have continued to work at the command or expect to be paid or issued follow-on orders. Even when he left, he did so to fix the problems with his pay and orders because he believed himself to be on active duty. Pl. Mot. at 4. Despite knowing that he would be committing a crime by leaving his command without notifying anyone and obtaining leave, Plaintiff left out of "frustration" when the problems with his pay and orders were not resolved after only three weeks. AR 199. The BCNR did not have to find that Plaintiff committed the crime of UA to use his actions as a basis of their decision to issue a BIOTS discharge. They simply had to find this episode relevant to the inquiry, and they did. If an active duty military member is having problems with pay and orders, or any other type of administrative

---

[2] This would have been an interesting court case because other evidence suggests that the August 24 discharge was "administratively rescinded" before Plaintiff's absence. AR 226.

problems associated with service in a large organization, it is imperative that they attempt to fix the problems through appropriate channels and not resort to leaving military control without notice or explanation, especially after only three weeks. The BCNR concluded that this was "not the way military members were supposed to solve their problems," a fact-based and rational basis to substantiate a BIOTS discharge when considered with the other evidence. AR 18.

      Fourth, Plaintiff argues that the fact that he stated that he desired a discharge should not have been one of the bases of the BCNR's decision to award a BIOTS discharge because the administrative record reflects that he actually wanted to remain in the Navy. Pl. Mot. at 16. Plaintiff bases this argument on the fact that, two years after his discharge, he reveals a conversation that he had with two officers and lawyers in the Staff Judge Advocate's office where they purportedly threatened and coerced him into stating that he wanted a discharge.[3] Pl. Mot. at 18. There is no evidence in the record to support this other than the Plaintiff's assertion two years later. The record does contain several pieces of evidence suggesting otherwise. First, an email between the commanding officer and his attorney reveals that it was Plaintiff's parents, not the Plaintiff, who contacted the Congressman about Plaintiff's situation. AR 226. The email also states, "The [Plaintiff] wants to go home now, although if he chooses to stay, I think his parents would be happy." Id. Second, Plaintiff told a civilian mental health professional that he

---

[3] Plaintiff offers no motive why these officers and lawyers would threaten him to agree to separation. Processing him again for administartive separation actually created more work for the Staff Judge Advocate's office. AR 218-219. The lawyer would have no reason to tell Plaintiff that his "life would be hell" there because, having finished recruit training, Plaintiff would have been issued the orders he was awaiting before going UA and would have left that command. AR 200. Plaintiff does not articulate how his "life would be hell" for the short time at the command, nor does anything in the record suggest that Plaintiff's administrative problems would have followed him to his next command once he was issued orders. Id.

desired a discharge in the safety of a private mental health examination. AR 127. Third, on two occasions Plaintiff was notified in writing that the command was processing him for separation, and he waived his rights to consult with an attorney, submit a statement, or have the Commanding Officer's decision to separate him reviewed by a higher authority. AR 203-204, 218-219. The fact that the BCNR chose to believe the other evidence in the record over Plaintiff's unsubstantiated statement is wholly within their discretion, and this Court should not secondguess this decision.

      The evidence reveals that, after Plaintiff's administrative problems came to light, he was asked if he still wanted a discharge and responded affirmatively. AR 127, 218-219, 266. Then the command processed him for the most obvious reason they had at the time- ODD. AR 203-204. The BCNR decided that this reason for processing was not substantiated properly in the records, and concluded that Plaintiff would have been processed for BIOTS had the command known that ODD was not available at that time. AR 17-18. Although the Plaintiff's statements of his desire for a discharge are not in and of themselves evidence that a BIOTS discharge was the appropriate and inevitable outcome in 2000, it certainly was a significant factor that the command considered at the time when they decided to process him for a discharge. AR 226. Just as the command considered Plaintiff's statements desiring a discharge in 2000 a relevant factor in their decision to separate him, so, too, was this suitable factor for the BCNR to consider when deciding what would have been the appropriate and inevitable outcome in 2000. AR 226.

      Contrary to the Plaintiff's assertions, the BCNR decisions demonstrate a "rational connection" between the facts presented and the resulting decision. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. Because the Court should not "substitute its judgment for that of the agency"

and because the BCNR's decisions regarding these records were not arbitrary, capricious or an abuse of discretion, the BCNR's decisions should be summarily affirmed. Id.

## CONCLUSION

For the reasons stated above, Defendant should be granted summary judgment upon the administrative record and Plaintiff's cross motion for summary judgment should be denied.

Respectfully submitted,

\_\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

\_\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

\_\_\_\_/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

OF COUNSEL:
Lieutenant Katherine S. Pasieta
Judge Advocate General Corps
United States Navy
Office of the Judge Advocate General
General Litigation Division (Code 14)
Washington Navy Yard
1322 Patterson Avenue SE, Suite 3000
Washington, D.C. 20374-5066
Telephone: (202) 685-8389

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN G. BURT, </br></br>      Plaintiff,</br></br>v.</br></br>DONALD C. WINTER,</br>Secretary of the Navy,</br></br>      Defendant. | Civil Action No.: 06-2038 (HHK) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**TO WHICH THERE EXISTS A MATERIAL ISSUE**

Pursuant to LCvR 7(h) and 56.1, Defendant refers to Plaintiff's Statement of Material Facts Not In Genuine Dispute ("Plaintiff's Statement") and designates below those material facts to which there exists a genuine issue. The numbered paragraphs below correspond to the unnumbered paragraphs in the Plaintiff's Statement and are admitted if there is no genuine issue or denied if there is a genuine issue.

1. Admit.

2. Admit that Plaintiff was diagnosed with Oppositional Defiant Disorder ("ODD"). Deny that it was without testing or following proper diagnostic procedure.

3. Admit.

4. Admit that the two Petty Officers made these statements. However, Defendant clarifies that these statements were made by only two individuals at his command over two years after Plaintiff was discharged. Administrative Record ("AR") 119-120. Plaintiff's performance was not documented in 2000.

5. Admit that PSD, not the Plaintiff's command, issued his DD214 in absentia believing him to be no longer at the command. AR 226.

6. Admit.

7. Admit.

8. Defendant admits that Plaintiff contends that he worked daily for three weeks to solve the administrative problems resulting from the first discharge. AR 199. Plaintiff's statement is the only evidence of this. Likewise, Defendant cannot confirm that the reason Plaintiff left his command was to obtain assistance from his parents and his Congressman. Other evidence suggests that it was Plaintiff's parents, not Plaintiff, who contacted the Congressman for assistance. AR 226. Deny that Plaintiff was told that he would face disciplinary action. Deny that he was told that if he stayed in the Navy his life would be hell. There is no evidence in the record to support this other than the Plaintiff's assertion two years later. AR 199-200. Admit that Plaintiff agreed to be discharged; deny the word "reluctantly."

9. Admit.

10. Admit.

11. Admit Plaintiff submitted a mental health evaluation by a private psychologist to the BCNR, dated March 1, 2002, stating there was a lack of sufficient documentation to support a diagnosis of ODD from the records provided. AR 128-129.

12. Admit.

13. Deny the characterization of the BCNR's 2004 decision that they did not "correct the error and remove the injustice of being improperly separated."

14. Deny that the BCNR "declined to grant full and complete relief to plaintiff for his admittedly improper separation." BCNR accepted review *solely* on the issue of reenlistment

code. AR 8. The BCNR did not consider, nor did it discuss, the propriety of the initial decision to award the BIOTS discharge. AR 7-8. The upgrade in discharge had nothing to do with the propriety of the discharge, and, in fact, represents complete relief on the only issue the BCNR considered, the propriety of a RE-4 code given Plaintiff's post-service adjustment.

Respectfully submitted,

____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

OF COUNSEL:

Lieutenant Katherine S. Pasieta
Judge Advocate General Corps
United States Navy
Office of the Judge Advocate General
General Litigation Division (Code 14)
Washington Navy Yard
1322 Patterson Avenue SE, Suite 3000
Washington, D.C. 20374-5066
Telephone: (202) 685-8389